# CHARLESTON.

G. W. BAILEY *v.* STATE COMPENSATION COMMISSIONER

(No. 6842)

Submitted September 3, 1930.  Decided September 9, 1930.

*England & Ritchie,* for appellant.

*H. B. Lee,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for respondent.

HATCHER, JUDGE:

In October, 1923, while employed in a mine of a subscriber to the state workmen's compensation fund, the petitioner's right hip was dislocated, his left ankle was sprained and his left arm injured by a fall of slate.  He received compensation for these injuries from the fund until February, 1924, when he was pronounced cured by two physicians who had him in charge.  He then worked until May, 1926, when a lameness in both legs developed to such an extent as to prevent further labor.  He thereupon applied to the State Compensation Commissioner for further compensation for the injuries received in 1923, on the theory that his lameness was the result of those injuries.  The commissioner refused the relief sought, and this appeal was allowed.

The most material evidence which was developed after the case was re-opened is as follows:

The State laboratory reported in 1927 that petitioner's blood gave a four plus positive reaction under the Wassermann test.

Dr. H. G. Camper of Welch, President of the State Public Health Council, examined petitioner in October, 1927, under the direction of the Commissioner and reported: "He walks with the aid of two crutches and slightly drags the left foot. There is atrophy of both thighs and legs. Reflex action in both knees is increased. There is no symptoms of locomotor ataxia and he does not have a Rhomberg sign. There is nothing in the examination of the eye that would suggest neuro-syphilis. X-ray examination shows a fracture of the body of the fifth lumbar vertebra. Examination of his blood made in the state laboratory shows he has four plus, positive, Wassermann. While this Wassermann is positive this man has sufficient body injury to account for his condition and as stated above there is no symptoms of neuro-syphilis."

In February of 1928 Russel Kessel, medical examiner for the compensation department, advised the Commissioner: "It seems that the point of contention in this claim is that claimant (petitioner) is suffering from syphilis, which is proven by the positive Wassermann. * * * In view of the fact that this man has a positive Rhomberg sign and a beginning argyl Robertson pupil he is at the present time suffering from neuro-syphilis. * * * With these factors in mind I believe he should not be further compensated and recommend the same." And in April, 1929: "Claimant has been examined by myself as well as Dr. Camper and we do not believe he is entitled to further disability."

Dr. L. E. Cox, of Pike County, Kentucky, was interviewed by an officer from the Commissioner's office in June, 1927. He stated that about May, 1926, because of "clinical evidence, history and report from Kesler-Hatfield Hospital at Huntington," he administered to petitioner "anti-luetic" treatment, and that in his opinion the lameness was due to syphilis.

Dr. G. F. Conley, of Mingo County, was also consulted by

the same official at the same time. Dr. Conley had waited on petitioner when he was injured in 1923. This doctor was of opinion that the injury was responsible for the lameness now existing.

Drs. Richard B. Easley and John E. Cannady, of Charleston, W. Va., examined petitioner on November 4, 1929, and wrote as follows: "Examination reveals an inequality of the deep reflexes in the lower extremity in that the knee and ankle jerks are greater on the right than on the left. There is a positive Babinski and Opperheim on the right and a suggestive positive on the left. Sensory examination shows a hyperesthesia to cotton touch and pin prick in the right lower extremity. Spinal fluid tests are completely negative, the cell count being 3 per cu. mm., total protein of 23 mgms per 100 cu., normal colloidal gold curve and a Wassermann reaction negative in all dilutions. The blood Wassermann is two plus. X-ray of the lumbar spine, lateral view, does not show any pathology, but the A. P. view shows a definite parrot beak lipping between the first and second lumbar vertebrae. This would indicate either an old inflammatory process or the results of a slight fracture. In view of the fact that the parrot beak lipping involves only one side of one joint, think it is rather evident that this is due to fracture. In our opinion, there is no evidence whatever upon which to base a diagnosis of central nervous system *lues*. We believe that this man's condition is a direct result of the injury received."

Petitioner then sought the advice of Dr. R. O. Rogers of the Bluefield Sanitarium, who on January 24, 1930, wrote: "Dr. Richard B. Easley and Dr. John E. Cannaday are outstanding authorities, and I don't think we could add anything to the results of their examination."

The rejection of the petitioner's claim was undoubtedly due to the conclusion by the commissioner that petitioner's present condition was occasioned by syphilis. That conclusion is based on the opinions of Drs. Cox and Kessel. Directly opposing the opinions of these doctors are those of Drs. Camper, Conley, Easley and Cannaday. As the Commissioner had selected Dr. Camper to examine petitioner, as well as because of his high

professional position, it would seem that his findings and opinion should have special consideration. Because Drs. Easley and Cannaday are recognized as "outstanding authorities" by their associates, their opinions are also entitled to great weight. Drs. Cox and Kessel may likewise bear high reputations, but the opinion of Dr. Cox was due in part to a report from the Kesler-Hatfield Hospital, and that of Dr. Kessel largely to the four plus Wassermann reaction. The Hospital report is not in the record, and Dr. Cox does not state what it contained. Dr. Kessel says syphilis is proven by the four plus Wassermann. But Dr. Camper does not consider that test as conclusive as does Dr. Kessel. In this Dr. Camper is supported by competent medical authority. In referring to syphilis, Crossen on Diagnosis, etc., says on page 119: "There has been a tendency in some quarters to place too much reliance upon the Wassermann reaction and its modifications. The diagnosis should not be based upon this test alone without other evidence, as there are other conditions that may give rise to this reaction." Dr. Camper found no symptoms supporting the Wassermann reaction. Dr. Kessel seems to assume the existence of such other symptoms in using the phrase "In view of the fact that this man has a positive Rhomberg sign and a beginning argyl Robertson pupil. How these facts became apparent to Dr. Kessel is not disclosed. Dr. Camper specifically states that petitioner did not have the Rhomberg sign and that there was nothing in his eyes suggesting neuro-syphilis. Dr. Kessel seemed under the impression that Dr. Camper concurred in the luetic theory. That mistake probably influenced Dr. Kessel to some extent in forming his own opinion. For all which, we are of opinion that the Commissioner gave a significance to the opinions of Drs. Cox and Kessel which the evidence does not warrant. We therefore return the case to him for further consideration, suggesting that he procure the report from the Kessler-Hatfield Hospital referred to by Dr. Cox; that he obtain from Dr. Kessel an explanation of his statement as to the Rhomberg sign and the Robertson pupil, together with his opinion as to the probable effect on the petitioner of the fracture of the fifth lumbar

vertebrae noted by Dr. Camper, and as to the effect of the "parrot beak lipping between the first and second lumbar vertebrae" discovered by Drs. Easley and Cannaday (apparently not heretofore considered by Dr. Kessel), and take such other medical advice as may be necessary to fully develop the case.

*Remanded.*