G. W. BAILEY <em>v.</em> STATE COMPENSATION COMMISSIONER

(No. 6945)

Submitted January 21, 1931. Decided February 17, 1931.

(Rehearing denied April 3, 1931. Second petition for rehearing denied June 9, 1931)

*England & Ritchie,* for appellant.

*Howard B. Lee,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for respondent.

LITZ, PRESIDENT:

This is a second appeal by an injured employee seeking compensation under the workmen's compensation act for alleged disability accruing subsequent to a former award. The first appeal involved the ruling of the compensation commissioner denying the application of the claimant, G. W. Bailey, on the ground that the subsequent disability was due to syphilitic disease and not to the injury. *Bailey* v. *State Compensation Commissioner,* 109 W. Va. 324, 154 S. E. 764. The finding then under consideration was evidently based upon the opinions of Dr. L. E. Cox of Pike County, Ken-

tucky, and Russell Kessel, medical examiner for the compensation department, as opposed to those of Dr. H. G. Camper, president of State Public·Health Council, Dr. G. F. Conley, Mingo County, Dr. R. B. Easley, Dr. John E. Cannaday of Charleston General Hospital, and Dr. R. O. Rogers of Bluefield Sanitarium. JUDGE HATCHER, who wrote the opinion of the court, in commenting upon the expert evidence, said: ''The rejection of petitioner's claim was undoubtedly due to the conclusion by the commissioner that petitioner's present condition was occasioned by syphilis. That conclusion is based on the opinions of Drs. Cox and Kessel. Directly opposing the opinions of these doctors are those of Drs. Camper, Conley, Easley, and Cannaday. As the commissioner had selected Dr. Camper to examine petitioner, as well as because of his high professional position, it would seem that his findings and opinion should have special consideration. Because Drs. Easley and Cannaday are recognized as 'outstanding authorities' by their associates, their opinions are also entitled to great weight. Drs. Cox and Kessel may likewise bear high reputations, but the opinion of Dr. Cox was due in part to a report from the Kesler-Hatfield Hospital, and that of Dr. Kessel largely to the four plus Wassermann reaction. The hospital report is not in the record, and Dr. Cox does not state what it contained. Dr. Kessel says syphilis is proven by the four plus Wassermann. But Dr. Camper does not consider that test as conclusive as does Dr. Kessel. In this Dr. Camper is supported by competent medical authority. In referring to syphilis, Crossen on Diagnosis, etc., says on page 119: 'There has been a tendency in some quarters to place too much reliance upon the Wassermann reaction and its modifications. The diagnosis should not be based upon this test alone without other evidence, as there are other conditions that may give rise to this reaction.' Dr. Camper found no symptoms supporting the Wassermann reaction. Dr. Kessel seems to assume the existence of such other symptoms in using the phrase, 'In view of the fact that this man has a positive Rhomberg sign and a beginning argyl Robertson pupil.' How these facts became apparent to Dr. Kessel is not disclosed. Dr. Camper specifically states that petitioner

did not have the Rhomberg sign and that there was nothing in his eyes suggesting neuro-syphilis. Dr. Kessel seemed under the impression that Dr. Camper concurred in the luetic theory. That mistake probably influenced Dr. Kessel to some extent in forming his own opinion. For all which we are of opinion that the commissioner gave a significance to the opinions of Drs. Cox and Kessel which the evidence does not warrant. We, therefore, return the case to him for further consideration, suggesting that he procure the report from the Kesler-Hatfield Hospital referred to by Dr. Cox; that he obtain from Dr. Kessel an explanation of his statement as to the Rhomberg sign and the Robertson pupil, together with his opinion as to the probable effect on the petitioner of the fracture of the fifth lumbar vertebrae noted by Dr. Camper, and as to the effect of the 'parrot beak lipping between the first and second lumbar vertebrae' discovered by Drs. Easley and Cannaday (apparently not heretofore considered by Dr. Kessel), and take such other medical advice as may be necessary to fully develop the case.''

No additional evidence was adduced upon the second hearing, except a written statement by Dr. H. D. Hatfield and Dr. J. D. Hirschman of Kessler-Hatfield Hospital of Huntington, as follows:

"November 8, 1930.

State Compensation Commissioner,
  Charleston, W. Va.

Dear Mr. Commissioner:

Re: Mr. G. W. Bailey, claimant.

The above claimant consulted us this morning regarding his disability stating that he has been unable to work as a result of an injury sustained by slate fall on October 26, 1923, resulting in a dislocation of his right hip and other injuries.

Our examination shows that the man is unable to walk without the use of crutches. There is a deformity of the right hip joint with decided shortening of the right lower extremity. There is definite atrophy of the muscles of both

lower extremities, particularly the leg muscles with signs of nerve disturbance. There are certain signs in his case that would indicate a cerebro spinal lues, but his flued test made by Doctor R. D. Easley on November 4, 1929, was absolutely negative. This, I believe to be conclusive evidence that his present disability is not a luetic nature. It is unfortunate that there was no attempt to fully rehabilitate him after the occurrence of his injury. His disability has been aggravated by the fact that he has been on crutches for over four years, this undoubtedly explaining to considerable extent the atrophy of the muscles of the lower extremities as a result of non-use.

The x-ray picture of his hip joint shows definite chronic inflammatory changes above the capsule of his point. "He is 100% disabled from doing manual labor." Upon consideration of the record as then made the commissioner entered an order on November 26, 1930, finding that the claimant was entitled to 60% permanent partial disability, and awarding him compensation for 240 weeks from October 15, 1930, at the rate of $16.00 a week, less 13 3/7 weeks already paid.

The claimant contends that he should have been granted 100% disability as of June 19, 1926. The commissioner in failing to test the opinions of Drs. Cox and Kessel, as suggested by this Court, and in entering a substantial award, is presumed, at least, to have abandoned the theory that the sole cause of the increased disability is syphilitic disease. It remains to determine (1) the percentage of disability, and (2) whether syphilitic disease exists as a contributing cause.

According to the expert opinion for the claimant, which should be accepted, the injury, which occurred October 26, 1923, is responsible for his present disability. The claimant has filed the affidavit of himself and several acquaintances showing that he has been unable to work since 1926. Dr. Camper stated, October 13, 1927, that Bailey was then entitled to at least 40% disability. Drs. Cannaday and Easley stated November 4, 1929, "apparently he has a very considerable amount of disability." As already shown, Drs. Hatfield and Hirschman state that claimant "is 100% disabled from doing manual labor."

In view of all the evidence, we are inclined to accept the date specified by the commissioner from which payments should be made to the claimant and to fix his disability at 100 per centum; and it will be so ordered.