ELMER REED *v.* STATE COMPENSATION COMMISSIONER *et al.*

(No. 7370)

Submitted September 7, 1932. Decided September 20, 1932.

*England & Ritchie,* for relator.

*H. B. Lee,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for respondents.

LIVELY, JUDGE:

On September 9, 1927, Elmer Reed's leg was crushed below the knee while working as a brakeman on a trip of cars in a mine of a subscriber to the Workmen's Compensation Fund. Amputation was first made at the knee joint, but later it became necessary (from sluffing of the skin) to amputate four inches above the knee, which was done. He was awarded compensation for a 45% disability November 5, 1927, and paid the balance of his compensation in a lump sum on May 7, 1929, and executed a release of all claims against the compensation fund and commissioner resulting from his injury. On November 7, 1929, he advised the commissioner, through his attorney, that he had been paid a 45% disability but was entitled to a 50% disability under the statute, and was answered that 45% was the maximum that had been paid in like cases. Then, on January 15, 1931, claimant again wrote the commissioner asking for payment on the basis of a 50% disability, and was answered that he could not be award-

ed a 50% disability unless the amputation was made into the middle third a considerable way, nor a 55% disability until the amputation was up near the hip, and further payment was denied. On May 17, 1932, counsel again insisted on an allowance for 5% more disability and was advised that claimant had been fully compensated. Formal objection was filed to this ruling, and this petition in mandamus promptly followed, praying that the commissioner be directed to pay the additional 5% claimed. The commissioner's answer to the petition admits the facts stated as true, and relies on the receipt for the lump sum as a discharge from further compensation; and relies further upon the fact that claimant lost only a part of his thigh (four inches above the knee) and that 45% for the loss of a leg is all that the statute allows in such cases. The subscriber to the fund (the employer) interposed a demurrer to the petition, and argues that the writ should be denied because relator did not object in writing within ten days after receipt of notice of the lump sum order of May 23, 1929, as provided in chapter 23, article 5, section 1 of the Code of 1931. This point is not well taken, because the "objection within ten days" applies only to cases where the award goes to the basis of the claimant's right to compensation, on the ground that the injury was self-inflicted, or not received in the course of and resulting from the employment, or upon any other ground going to the basis of the claim. The award did not go to the basis of claimant's right to compensation. The facts are undisputed and the correct percentage of allowance alone is involved. The commissioner has decided that amputation of the thigh four inches above the knee entitled the claimant to a 45% disability. The further point is raised that no appeal was taken within ninety days after notice of the final decision. None would lie, for the same reason that notice of objection was not necessary. The so-called appeal provided for in Code 23-5-1, above cited, lies where the award goes to the basis of the claim. *Meek* v. *Compensation Commissioner*, 108 W. Va. 68, 150 S. E. 230. The further point is raised that the commissioner cannot change his original award because more than one year has expired since the date of his last payment to relator on May 3,

1929; and section 40 of chapter 71, Acts 1929, is relied upon. That act, passed March 9, 1929, in effect from passage, by section 40 thereof amended the continuing jurisdiction of the commissioner over cases before him by providing that no further award may be made by him, except within one year after the death of the employee in fatal cases, or except in case of non fatal injuries within two years after payments for temporary disability shall have ceased, and within one year after the commisioner shall have made the last payment in any permanent disability case. The purpose of the proviso in that act was to have some finality in compensation cases, otherwise under the old statute of continuing jurisdiction there was none, and it was difficult to ascertain the actual financial condition of the fund, and its solvency. At least, the new statute was to have an end of payments for injuries, and permanently close the cases. And in cases arising since the passage of that act, mandamus would not likely lie to compel the commissioner to pay any further sums after the times therein set out had expired; a question not here involved. But we have heretofore held that this statute was not retroactive and could not affect the rights of claimants whose injuries were received prior to its passage. *Jenkins* v. *Heaberlin, Comr.*, 107 W. Va. 287, 148 S. E. 117; *Carbon Fuel Co.* v. *State Compensation Commissioner*, 111 W. Va. 639, 163 S. E. 62. It is true that ordinarily so-called appeals are not warranted where the questions involving the amount of compensation are involved. *Meeks* v. *Commissioner*, 108 W. Va. 68, 150 S. E. 230. But where the facts are not in dispute, and the statute fixes the percentage of compensation, the commissioner has no discretion to make an award contrary to the statute. It is his ministerial duty to obey the statute. For example, to illustrate: The statute says that for loss of one eye there shall be paid a 33% disability. Can the commissioner award a less percentage, the fact of the loss of the eye being admitted, or established beyond doubt? In such case, mandamus would lie to compel the award of 33%. He has no discretion but to speak the law. We held in *Bailey* v. *Commissioner*, 110 W. Va. 151, 158 S. E. 675, a case showing 100% total disability, that the commissioner should allow compensa-

tion on that basis. If the relator shows a clear legal right to 5% more than has been paid, mandamus will lie. We are not impressed with the contention that the lump sum payment of May 7, 1927, released any further claim relator had for compensation. The statute authorizes the commissioner to pay over his award in a lump sum. It does not contemplate that he shall compromise his rights, but only to receive at once in one payment the periodical installments allotted him.

We now come to the merits. The statute, Code 23-4-6 (classification of benefits), says that: "The loss of leg shall be considered a forty-five per cent disability. The loss of thigh shall be considered a fifty per cent disability. The loss of thigh at hip joint shall be considered a sixty per cent disability." Thigh is defined to be "the proximal segment of the leg or hind limb between the knee and the trunk. It has a single bone, the femur." Webster's New International Dictionary. The commissioner awarded the per cent of disability for loss of a leg. Evidently the legislature considered the leg as being between the foot and knee, for compensation purposes, for the statute allows compensation for the loss of one phalange of a great toe, at 5%, a great toe at 10%, the loss of other toes at 4%, and the loss of other toes (one phalange) at 2%, the loss of all toes at 25%, the loss of forepart of foot at 30%, the loss of a foot at 35%, then the loss of a leg at 45%, the loss of thigh at 50%, and the loss of thigh at hip joint 60%. It will be observed that the commissioner had awarded relator for loss of a leg, for the percentage is fixed at 45%, which is the percentage for loss of a leg. The undisputed fact is that relator has lost more than a leg, for the amputation was made at four inches above the knee. Counsel for the commissioner points out that 50% is allowed for loss of thigh and 60% for loss of thigh at hip, and that there is a leeway of 10% from the knee to the hip joint, and argues that if the thigh bone is twenty inches long then the loss of two inches of the femur would be a 1% disability and loss of four inches would be a 2% disability, and reckoning upon averages the claimant would be entitled to an additional 2% disability. But the commissioner has not reckoned upon averages, and has allowed nothing more than for the loss of

a leg. Clearly, claimant has lost a leg (foot to knee) and more. Clearly, he is entitled to more compensation than has been given him. Shall he be compensated upon averages? The statute does not so direct. In the case of the loss of portions of the lower extremity, toes, and foot, the percentages of loss are fixed, but not so for the loss of a leg or thigh. Had the legislature so intended it would have said so and fixed averages, possibly the averages argued for on behalf of the commissioner. We have repeatedly held that the statute must be given a liberal construction to carry out the benign purpose underlying it; namely, adequate compensation to workmen injured or killed in the course of and resulting from the employment. No distinction is made between the loss of the whole thigh below the hip joint, and the loss of the part of the thigh below the hip joint by the statute. We are of the opinion that relator is entitled to compensation for the loss of a thigh prescribed by law to be a disability of 50% instead of the 45% which was awarded him. A similar question arose in *Payne* v. *Industrial Commission,* (Ill.) 129 N. E. 830. The Illinois statute provides that, ''For the loss of a leg, or the permanent and complete loss of its use, fifty per centum of the average weekly wage during one hundred and seventy-five weeks'' should be awarded. A workman's leg was amputated ten inches above the ankle joint and the contention was made that the award should have been made for the loss of a foot and not for the loss of a leg. The supreme court held that the loss of any substantial portion of the leg constituted the loss of the leg within the meaning of the act and confirmed the finding that the workman should be paid for the loss of his leg.

We award the writ for the payment of the 5% disability prayed for.

*Writ awarded.*