RAYMOND G. HOLSTEIN

*v.*

STATE COMPENSATION DIRECTOR

AND

UNION CARBIDE CORPORATION, *a corporation*

(No. 12462)

Submitted September 7, 1965. Decided November 16, 1965.

316

BROWNING, PRESIDENT, dissenting.

*Benjamin D. Tissue,* for appellant.

No appearance for appellee.

HAYMOND, JUDGE:

This is an appeal upon the application of the employer, Union Carbide Corporation, a corporation, from an order of the Workmen's Compensation Appeal Board entered March 10, 1965, which affirmed the order of the State Compensation Director, now State Workmen's Compensation Commissioner, of October 13, 1964, granting the claimant, Raymond G. Holstein, an award of 6% permanent partial disability for the amputation of a portion of the distal phalanx of the index finger of his right hand.

This proceeding was submitted for decision on September 7, 1965, upon the petition of the employer, the record of this proceeding before the commissioner and the appeal board, and the brief and the oral argument of the attorney in behalf of the employer. There has been no appearance in this Court in behalf of the claimant.

The claimant was injured on February 18, 1964, while engaged in installing a pipe pole support at the plant of the employer in Kanawha County, West Virginia. The support slipped from the grasp of a fellow-employee, caught the claimant's finger between the pole and a bracket, and caused what is described in the physician's preliminary report, form C. D. 7, as an avulsion of the skin of the tip of the right index finger. The claimant was treated by a physician, Dr. Harshbarger, after admission to Thomas Memorial Hospital on the same day of the accident where a laceration of his right index finger was sutured. A report of an x-ray examination of the right hand of the claimant while at the hospital states that there is a soft tissue injury at the index finger and apparently a minimal loss of bone at the distal end of the tuft of the distal phalanx of the index finger indicating a slight degree of amputation and that the stump of the finger is smooth.

There is no indication that the commissioner referred the claimant to any doctor for evaluation of his injury and by order entered April 16, 1964, he granted the claimant the statutory award of a 6% permanent partial disability for the total loss of the distal phalanx. The employer protested the award and asked that the claimant be referred to a physician for examination and report. This was done and the claim was set for hearing. At the hearing the employer introduced two reports of Dr. Kessel. His second report contains these paragraphs:

"In my opinion the amputation of the index finger at a location such as this claimant had his finger amputated is not as disabling as if the entire distal phalanx of the finger were amputated.

"In my interpretation of the Workmen's Compensation Act, and an experienced physician in disability ratings, I would recommend six (6%) percent permanent partial disability which I did at the time of previous examination. If the award of six (6%) percent is not a statutory situation with the loss of a portion of the phalanx of the index finger then I would say from the functional situation, perhaps

three (3%) percent permanent partial disability would be adequate."

As above indicated the director affirmed his initial award of 6% permanent partial disability by his order of October 13, 1964. With its order of affirmance of March 10, 1965, the appeal board filed an opinion which contains these paragraphs:

"We have read *Mills* v. *Commissioner*, 126 W. Va. 704, 29 S. E. 2d 633, and *Dillon* v. *Commissioner*, 119 S. E. 2d 89, but are of opinion that neither case is controlling here. Where the amputation is beyond the distal phalanx it appears there is good cause for applying the rule which the Director's office uses, i.e., loss of part of the phalanx permits recovery for the entirety. The same reason does not apply to the upper tip of the first or distal phalanx, and the Employer's position possesses good logic.

"However, because the Director has here ruled that Claimant is entitled to the full recovery and, more realistically, because the Employer is in better position to carry this case of first impression to the Supreme Court of Appeals than is the Claimant, we are unwilling to set aside the Director's order, It is affirmed."

The pertinent provisions of the statute, Section 6, Article 4, Chapter 23, Code, 1931, as amended, are:

"Where compensation is due an employee under the provisions of this chapter for a personal injury other than first-stage silicosis, such compensation shall be as provided in the following schedule:

" * * * .

" (d) If the injury results in the total loss by severance of any of the members named in this subdivision, the percentage of disability shall be determined in accordance with the following table, and award made as provided in subdivision (c) of this section: * * * :

"The loss of index or first finger (one phalanx) shall be considered a six percent disability.

"The loss of index or first finger shall be considered a ten percent disability. * * * .

" (f)   The award for permanent disabilities intermediate to those fixed by the foregoing schedule and permanent disability of from one per cent to eighty-four per cent shall be in the same proportion and shall be computed and allowed by the commissioner.

" (g)   The percentage of all permanent disabilities other than those enumerated in subdivisions (c), (d), (e) and (f) of this section shall be determined by the commissioner, and award made in accordance with the provisions of subdivision (c). * * * ."

The employer contends that as there is no total loss by severance of the distal phalanx of the first finger of the right hand of the claimant he is not entitled to the scheduled statutory award of 6% permanent partial disability for the total loss of one phalanx of such finger and that he should have been allowed only a 3% permanent partial disability based upon the medical evaluation with regard to the functional disability of the claimant as set forth in the report of Dr. Kessel.

Though the precise factual situation here involved has not been considered in a prior decision of this Court, the question of the degree of permanent partial disability under the statutory table in Section 6 for the severance of members of injured compensation claimants has been determined in several cases, among which are *Vandall* v. *State Compensation Commissioner*, 110 W. Va. 61, 158 S. E. 499; *Reed* v. *State Compensation Commissioner*, 112 W. Va. 524, 116 S. E. 282; *Pugh* v. *State Compensation Commissioner*, 113 W. Va. 84, 166 S. E. 817; *Mills* v. *State Compensation Commissioner*, 126 W. Va. 704, 29 S. E. 2d 633; and *Dillon* v. *State Compensation Commissioner*, 146 W. Va. 269, 119 S. E. 2d 89.   In all those cases, however, the facts with respect to the severed portion of the member of the claimant were materially different from the material undisputed facts in this case.   For that reason those cases are distinguishable

from and are not controlling in the case at bar as an analysis of each of those cases will indicate and disclose.

In the *Vandall* case, a mandamus proceeding, it appeared that the injury of the claimant resulted in the amputation of four fingers and the palm of his hand and that he had been awarded a 32% permanent partial disability by the commissioner. This Court held that he was entitled to the statutory 50% disability for the loss of a hand. It is clear that the Court regarded the substantial loss of four fingers and the palm of the hand as the equivalent of a total loss of the hand and required an award of the statutory percentage of 50% permanent partial disability for such total loss. That this is so is indicated by these statements in the opinion: "In this case the entire palm being severed, nothing remains of the hand for the thumb to approximate. The use of the hand as such, is lost as completely as if the thumb were also severed. Therefore under a broad and liberal construction of the statute, which we are obligated to make, we hold that the petitioner has suffered a total loss of his hand because of the severance of the palm and fingers."

In the *Reed* case, also a mandamus proceeding, it appeared that the claimant's leg was crushed below the knee and that amputation was first made at the knee joint but that it later became necessary to amputate the leg at a point four inches above the knee. He was awarded compensation for a 45% permanent partial disability. After that award was paid the claimant claimed that he was entitled to a 50% permanent partial disability under the statute and upon the refusal of the commissioner to make such award he instituted a mandamus proceeding in which this Court held that he was entitled to a 50% permanent partial disability award under the statutory provision for the loss of his thigh which is defined as the proximal segment of the leg or hind limb between the knee and the trunk which consists of a single bone, the femur. It is clear that the Court regarded as substantial the loss of a portion of his leg above the knee which, unlike the finger here involved, consisted of only one bone or segment, and that the loss of any portion of that segment

was for all practical purposes the equivalent of the loss of the entire segment. That such substantial loss, in effect, constituted a total loss is indicated by the reference in the opinion to a case decided by the Supreme Court of Illinois, *Payne* v. *Industrial Commission*, 296 Ill. 223, 129 N. E. 830, in which that Court held that the loss of any substantial portion of the single leg segment constituted the loss of the leg within the meaning of the Illinois statute which provided for an award of 50% of the average weekly wages during 175 weeks for the loss of a leg.

In the *Pugh* case, also a mandamus proceeding, it appeared that the claimant's leg was amputated 5-1/2 inches above his ankle as a result of his injury and that the commissioner fixed the permanent partial disability award at 40% instead of 45% for the loss of a leg provided by the statute. Here, as in the *Reed* case, it is clear that the loss was substantial and for all practical purposes constituted a total loss of the leg. This Court so held and required the commissioner to grant the claimant the statutory award of 45% permanent partial disability for the total loss of a leg.

In the *Mills* case the claimant suffered an injury to his left thumb which resulted in its amputation at a point above the distal joint which severed about one-fifth of the upper or proximal phalange. Some use of the thumb remained but it was estimated that the claimant had suffered a 75% loss of its use. He was granted the statutory 20% permanent partial disability award for the loss of a thumb and this award on appeal was affirmed by this Court. Here too the loss of the thumb was substantial and for all practical purposes constituted a total loss. All that remained of the thumb was the stump of the proximal phalange.

In the *Dillon* case two finger injuries were involved; one was the loss by amputation of two phalanges of the middle finger of the left hand of the claimant and the other was the later loss of a part of the index finger of his left hand. He had been granted a 10% permanent partial disability award for the first injury and a 5% permanent partial disability award for the second injury. Upon a petition to reopen his

claim and to obtain an award of 20% permanent partial disability for the loss of both fingers of his left hand the commissioner refused to reopen the case, the appeal board ordered its reopening, and on appeal this Court affirmed the order of the commissioner which denied the petition to reopen. In the opinion this Court used this language: "This claimant in the two injuries did not suffer 'the total loss by severance' of his index and middle fingers. Therefore, this statutory provision is not applicable to his disability. If the Legislature had desired to fix a per centum of disability for partial loss of the index finger and partial loss of the middle finger in separate injuries it could easily have done so. On the contrary the language is clear that Subsection (d) is applicable only where 'the injury results in the total loss by severance' of the members of the body specifically referred therein."

The employer insists, in effect, that inasmuch as the portion of the claimant's finger severed is minimal and insignificant rather than substantial, the injury is not within or governed by the provisions of subdivision (d) of the statute. This contention should be and it is upheld. It is obvious that the severance of only the fleshy tip and an insignificant amount of the bone does not constitute the loss of a substantial portion of the distal phalanx of the finger of his right hand and that it can not in any sense of the word be considered to be a total loss of such distal phalanx which would entitle the claimant to the statutory award of 6% permanent partial disability. The minimal loss by severance of a small portion of the first phalanx of the first or index finger of an injured compensation claimant is not a total loss of such phalanx within the meaning of subdivision (d), Section 6, Article 4, Chapter 23, Code, 1931, as amended, and for such loss the claimant is not entitled to a statutory award of 6% permanent partial disability.

Though the substantial loss of a portion of a member of an injured person may, in effect, constitute a total loss as indicated in all of the above cited cases in which the statutory award was granted, it is obvious that the loss of a minimal or insignificant portion of a member of the injured

claimant can not, by any stretch of words or imagination, be considered to be a total loss within the meaning of the statute.

There are decisions of appellate courts in other jurisdictions based on statutes similar to Section 6 which support the foregoing conclusion. *Decicco* v. *John Morrell and Company*, 152 Kan. 601, 106 P. 2d 1053; *Edward E. McMorran and Company* v. *Industrial Commission*, 290 Ill. 569, 125 N. E. 284; *Tovrea Packing Company* v. *Tapia*, 63 Ariz. 503, 163 P. 2d 852.

In the *Deccico* case the claimant suffered the amputation of three-sixteenths of an inch of the distal portion of the distal phalange of his left index finger. The statute involved, specifying a schedule for injuries, provided that the loss of the first phalange of any finger or thumb should be considered equal to the loss of one-half of such finger or thumb and that compensation should be paid on that basis. The court said that the loss by amputation of three-sixteenths of an inch of the distal portion of the distal phalange of the index finger of the workman was not the "loss of the first phalange of the thumb or any finger" within the meaning of the statute and in the syllabus held that "Substantial loss of the phalange must be shown in order to require payment of compensation for 'the loss of the first phalange of the thumb or any finger,' under the provisions of paragraph (3) (6) G. S. 1935, 44-510, Workman's Compensation Act."

In the *McMorran* case the claimant lost one-sixteenth of an inch of the first phalange of the index finger of his right hand as the result of an injury sustained while engaged in operating a punch press during his employment. He based his claim for compensation upon a workmen's compensation statute which contained, among others, these provisions: "The loss of the first phalange of the thumb, or of any finger, shall be considered to be equal to the loss of one-half of such thumb, or finger, and compensation shall be one-half the amounts above specified." The "amounts above specified" were set forth in this clause of the statute: "For the loss of a first finger, commonly called the index finger, or

the permanent and complete loss of its use, fifty per centum of the average weekly wage during thirty-five weeks." In distinguishing the *McMorran* case from the case of *In re Petrie,* 215 N. Y. 335, 109 N. E. 549, in which it was held that the loss of more than one-third of the distal phalange entitled the claimant, under a similar statute, to an award for the loss of the entire first phalange, the court said:

"The facts in this case, however, are not on all fours with the *Petrie* case. The evidence shows, without contradiction, that the applicant lost but one-sixteenth of an inch off the first phalange of the index finger; that the injury did not interfere at all with the use of the distal joint; that the tip of the finger, while susceptible to cold and heat, did not in any way interfere with the use of the entire finger.

"While we are of the opinion that a liberal interpretation should be given to this class of cases, yet such interpretation should not go to the extent of becoming absurd. It cannot be reasonably said that the loss of one-sixteenth of an inch of the first joint of a finger is the loss of the first phalange or that the Legislature so intended. There is, therefore, a distinction to be drawn between this case, where but a small tip of the bone was taken, without the destruction of the use of the first joint of the finger, and the *Petrie* case where a substantial portion of the first phalange was amputated."

The extent of the loss in the Illinois case closely resembles that in the case at bar. In the Illinois case the court said in the headnote to the opinion that "Where an employé has lost one-sixteenth of an inch off the first phalange of the index finger, the injury not interfering with the use of the distal joint, nor with the use of the entire finger, compensation cannot be awarded as for the loss of the first phalange under Workmen's Compensation Act, § 8, par. (e)."

As the claimant has not suffered a substantial or total loss by severance of the distal phalanx of his index finger of his right hand, he is not entitled to the statutory award of 6% permanent partial disability for the total loss by severance of such phalanx. It follows that at least a substan-

tial loss of a phalanx must be shown in order to entitle the claimant to payment of the statutory award of 6% permanent partial disability for the loss by severance of the index or first finger of the right hand of the claimant and the provision of subdivision (d) of the statute which provides a 6% permanent partial disability for such loss of one phalanx of such index or first finger does not apply to or govern the compensation to which the claimant is entitled for the loss of a minimal portion of such phalanx. Instead, the compensation to which he is entitled should be determined by the commissioner as for permanent disabilities intermediate to those fixed by the schedule in subdivision (d) of the section and permanent disabilities of from one per cent to eighty-four per cent should be computed and allowed in the same proportion by the commissioner as provided in subdivision (f) of the section.

For the foregoing reasons the order of the appeal board and the order of the director, now commissioner, awarding the claimant 6% permanent partial disability are reversed and this proceeding is remanded to the commissioner with directions to award compensation to the claimant in accordance with the principles enunciated in this opinion.

*Reversed and remanded*
*with directions.*

BROWNING, PRESIDENT, dissenting:

I dissent. It is deferentially and respectfully, as always, that I find myself in complete disagreement with the other four members of this Court.

A review of the former pertinent decisions of this Court clearly shows that the issue here presented has on several occasions been adjudicated by this Court and that at the time all of those decisions were rendered, Code, 23-4-6 (d), as amended, provided, as it does now, that, "If the injury results in the total loss by severance of any of the members named in this subdivision, . . . ." In *Vandall* v. *Commissioner*, 110 W. Va. 61, 158 S. E. 499, the claimant had an injury which necessitated the amputation of the four fin-

gers and the palm of one of his hands. After he had been paid for a 32% permanent partial disability by the commissioner he sought a writ of mandamus in this Court directing the commissioner to increase his award by 18% making a total of 50%, the latter figure being the statutory award for complete loss of a hand. The commissioner resisted the proceeding in this Court upon the ground that the thumb was not severed, but the writ was issued, the Court stating in the opinion: "The exigencies of the case demand the issuance of a peremptory writ requiring compliance with the plain provisions of the statute."

In *Reed* v. *Commissioner*, 112 W. Va. 524, 166 S. E. 282, the claimant suffered an injury which resulted in amputation of a leg four inches above the knee. The statutory award then and now is 50% for loss of a thigh. Although the commissioner had awarded the claimant a 45% permanent partial disability, there was no objection or appeal, and the claimant accepted a lump sum settlement without objection to the amount of the award, this Court held in that case that mandamus would lie and a writ was issued directing the commissioner to award the plaintiff an additional 5% permanent partial disability upon the ground that that official did not have the authority under the statute to divide "the proximal segment of the leg or hind limb between the knee and the trunk. It has a single bone, the femur." It was contended by the commissioner that inasmuch as 50% was allowed by the statute for loss of thigh and 60% for loss of thigh at the hip, the 10% leeway thus afforded should be averaged according to the length of the thigh bone. This Court refused to adopt any such interpretation of the statute, stating: "Had the legislature so intended it would have said so and fixed averages. . . ." See also, *Pugh* v. *Comp. Com'r.*, 113 W. Va. 84, 166 S. E. 817.

The case of *Mills* v. *Commissioner*, 126 W. Va. 704, 29 S. E. 2d 633, is directly in point and indistinguishable upon the facts from the case at bar. This is the single syllabus point of that case: "Under Code, 23-4-6 (d), a claimant for compensation benefits who has lost a *part* of the proximal phalange of his thumb, by an amputation made necessary

by an injury sustained in the course of and resulting from his employment, is entitled to a disability rating based on the loss of an entire thumb." (Italics supplied) In that case, this Court, in an excellent opinion by Judge Fox, disposed of the "intermediate" provision of the act which it is contended should be applicable here as follows: "These holdings are based on the proposition, laid down in the *Reed* case, that 'No distinction is made between the loss of the *whole* thigh below the hip joint, and the loss of the *part* of the thigh below the hip joint.', *and not on any theory of comparative loss of use of the member affected.* The statutory provision as to 'intermediate' disabilities, Code, 23-4-6 (f), does not seem to have been considered as applying to the situations presented in the *Reed* and *Pugh* cases; and not being there applied, we are not disposed to depart from the principle necessarily adopted in those cases and apply the provision to the case at bar. Reasoning by analogy, we think the Compensation Appeal Board was correct in applying to the case at bar the rule followed in the *Reed* and *Pugh* cases, and, therefore, its order is affirmed." (Italics supplied) The test is whether a *part* of the member has been severed not "a substantial or total loss by severance", to quote from the majority opinion.

Pursuant to these unambiguous decisions of this Court, the workmen's compensation commissioner and the workmen's compensation appeal board have been provided with administrative directions as to the making of awards in amputations of the members of the body for which specific awards are provided by the statute. I would not disturb those cases and the administrative procedure which has been followed under them for so many years, but would adhere instead to the salutary rule of *stare decisis*. Furthermore, the legislative history of the pertinent provisions of the act is very persuasive. Since the decision of the first case cited above the legislature has amended the act, including this particular section, many times without any change in the language "total loss by severance" in view of the construction placed thereon by this Court in the cited cases.

Counsel for the employer relies upon the language contained in the opinion of the recent case of *Dillon* v. *State Compensation Commissioner*, 146 W. Va. 269, 119 S. E. 2d 89, but states in his brief that it "is not directly in point upon the factual situation which related to multiple finger injuries as a basis for reopening a claim, . . . ." The issue in that case, furthermore, involved the interpretation of the second injury provision of the workmen's compensation statute and it is not conclusive or persuasive upon the present issue.

If the precise issue presented upon this appeal were one of first impression or if the majority had found the pertinent provision of Code, 23-4-6 (d) to be clear and unambiguous, and overruled a long line of decisions of this Court, to which reference has heretofore been made, I probably would have gone along with the majority. Judges of a Court of last resort are loathe to admit that they or their predecessors ever made a mistake. Usually, and in most Courts, the phrase, *stare decisis,* is uttered and written almost in reverence. When you find in an opinion of such a court the words "distinguish" or "differentiate" or the phrase "precise factual situation" you may be assured that the writer is in deep trouble. It is to be noted that the majority states in its opinion that the issue decided is one of first impression in this jurisdiction, cites a few cases from other jurisdictions, and comes up with a "substantial loss" rule never before used in the previous, squarely in point, decisions of this Court. Need I state that this Court is bound by its former decisions but that decisions of other courts, even upon a question of first impression, are only persuasive. It is interesting to observe how my brethern "distinguished" factually this case from *Mills* v. *Commissioner,* 126 W. Va. .704, 29 S. E. 2d 633, to which reference has heretofore been made. This paragraph appears on page eight of the typewritten majority opinion:

> "In the *Mills* case the claimant suffered an injury to his left thumb which resulted in its amputation at a point above the distal joint which severed about one-fifth of the upper or proximal phalange.

Some use of the thumb remained but it was estimated that the claimant had suffered a 75% loss of its use. He was granted the statutory 20% permanent partial disability award for the loss of a thumb and this award on appeal was affirmed by this Court. Here too the loss of the thumb was substantial and for all practical purposes constituted a total loss. All that remained of the thumb was the stump of the proximal phalange."

There is no statement in the opinion of the *Mills* case that the "loss of the thumb was substantial and for all practical purposes constituted a total loss" or "all that remained of the thumb was the stump of the proximal phalange." Judge Fox, in paraphrasing the evidence in that case, said that *four-fifths* of the proximal phalanx remained, and that "some use of the thumb remains". I fear that my four brethren have converted themselves temporarily into medical examiners and civil engineers. Dr. Kessel, an able and respected medical examiner for the commissioner, stated in his report, quoted in the majority opinion, that ". . . the amputation of the index finger at a location such as this claimant had his finger amputated is not as disabling as if the entire distal phalanx of the finger were amputated." There is no evidence in this case as to the exact linear measurement of claimant's loss or what proportion that measurement bears to the remaining portion of the distal phalanx, whether more or less than one-fifth thereof. Dr. Kessel appears to be not only a good medical examiner but a good workmen's compensation lawyer. This quotation from his report emphasizes the administrative interpretation by the department as a result of the judicial interpretation of the pertinent provisions of the act: "In my interpretation of the Workmen's Compensation Act, and as an experienced physician in disability ratings, I would recommend six (6%) percent permanent partial disability. . . ." The only way that I can distinguish this case from the *Mills* case is that in this case the amputation was of a part of the index finger of the *right* hand and in that case the amputation was of a part of the *left* thumb.

I would affirm the workmen's compensation commissioner and the workmen's compensation appeal board.