IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**MARK DIXON,**
**Claimant Below, Petitioner**

**v.) No. 23-ICA-567**        (JCN: 2005023335)

**FAIRFAX MINING COMPANY, INC.,**
**Employer Below, Respondent**

**and**

**WEST VIRGINIA OFFICES OF THE INSURANCE COMMISSIONER, in its capacity as administrator of The Old Fund,**
**Respondent**

**FILED**
**July 30, 2024**
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

### MEMORANDUM DECISION

Petitioner Mark Dixon appeals the November 20, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent West Virginia Offices of the Insurance Commissioner in its capacity as administrator of the Old Fund ("Old Fund") filed a response.[1] Mr. Dixon did not reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which granted no additional permanent partial disability ("PPD") in the claim.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the Board's decision but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21 of the Rules of Appellate Procedure for resolution in a memorandum decision. For the reasons set forth below, the Board's decision is vacated, and this case is remanded for further proceedings consistent with this decision.

On December 7, 2004, Mr. Dixon suffered an open fracture of his right leg with near/partial amputation at the base of the midcalf. As a result of the injury, Mr. Dixon underwent a below the knee amputation of his right leg. Within about a year, Mr. Dixon was

---

[1] Mr. Dixon is represented by J. Thomas Greene, Jr., Esq., and T. Colin Greene, Esq. Old Fund is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq. Fairfax Mining Company, Inc. did not appear.

able to return to work. In August 2020, while continuing to work, Mr. Dixon began experiencing pain in the end of his stump, and he noticed that an area was becoming a dusky bluish color. Mr. Dixon sought medical care from Gary P. Barcinas, P.A., on August 18, 2020. Diagnostic testing revealed a right superficial femoral artery occlusion and Mr. Dixon followed up with Ellis Salloum, M.D., a vascular surgeon who performed two surgeries in August 2020. First, a femoral artery thrombectomy was performed for a right popliteal and femoral artery thrombosis, and a few days later, a right, above the knee amputation was performed.

Jennifer L. Lultschik, M.D., performed an Independent Medical Examination of Mr. Dixon on August 10, 2022. Dr. Lultschik listed the SFA occlusion and the above the knee amputation as compensable diagnoses in the claim and rated the impairment related to each condition. In rating the above the knee amputation, Dr. Lultschik referred to the American Medical Association *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("AMA *Guides*"), Table 63, page 83 and found 90% lower extremity impairment. Also by use of the AMA *Guides*, Dr. Lultschik rated the impairment associated with the SFA occlusion at 89% lower extremity impairment. Dr. Lultschik converted the lower extremity impairments to whole person impairment ("WPI") and combined them; thus, she arrived at a total of 59% WPI for the two conditions. However, Dr. Lultschik adjusted the overall impairment rating down to 45%, commenting that "[59%] exceeds the provision in WV Rule 20 for a maximum lower extremity whole-person impairment of 45%." Further, Dr. Lultschik determined that any previous award should be subtracted from the 45% impairment.

On September 22, 2022, the claim administrator issued an order granting no additional PPD award based on Dr. Lultschik's IME, noting Mr. Dixon's previous award of 45% PPD for "the amputation value of the leg for 2004." Thus, the claim administrator granted no additional PPD for Mr. Dixon's above the knee amputation. Mr. Dixon protested this order.

The Board affirmed the claim administrator's order on November 20, 2023. Although the Board acknowledged that following the previous 45% PPD award for the right leg amputation, two additional right leg diagnoses were added to the claim, it affirmed the claim administrator's order. The Board found that Mr. Dixon did not refute Dr. Lultschik's findings or show entitlement to additional PPD. Mr. Dixon now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the

petitioner or petitioners have been prejudiced because the Board of Review's findings are:

(1) In violation of statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the Board of Review;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Mr. Dixon argues that the Board erred in finding that he was fully compensated for his injuries by the previous 45% PPD award. Mr. Dixon further argues that the Board failed to consider that the previous award of 45% PPD was based upon a below the knee amputation. After that award, he underwent a revisionary above the knee amputation. Importantly, Mr. Dixon noted that the above the knee amputation changes the applicable portion of West Virginia Code § 23-4-6(f) (2005) because the surgery involved the removal of part of his thigh, but it was below the hip. The statutory language, Mr. Dixon argues, is straightforward and establishes that he is entitled to 50% PPD for the compensable above the knee amputation. Mr. Dixon also asserts that he is entitled to an additional 36% PPD found by Dr. Lultschik for the SFA occlusion.

In its order, the Board cites West Virginia Code § 23-4-6 and notes that for injuries occurring after May 12, 1995, PPD awards are to be based on medical impairment and that West Virginia Code of State Rules § 85-20 (2006) ("Rule 20") also provides that the measure of whole body medical impairment is based upon the AMA *Guides*. Missing from the Board's discussion is that West Virginia Code § 23-4-6(i) requires that "[f]or those injuries provided for in subdivision (f) of this section and section six-b of this article, the degree of disability shall be determined exclusively by the provisions of said subdivision and said section." West Virginia Code § 23-4-6(f) is directly applicable to the case at hand. This subsection provides the exclusive percentages of disability that apply to the loss of various body parts and is an exception to the requirement that the percentages of disability be determined by the degree of whole body medical impairment (also known as WPI). Pursuant to West Virginia Code § 23-4-6(f), "[t]he loss of a leg shall be considered a forty-five percent disability. The loss of thigh shall be considered a fifty percent disability."

West Virginia Code § 23-4-6(f) applies to the present case and serves to exclude an impairment determination based on the degree of whole body medical impairment. Thus, Dr. Lultschik's reliance on the AMA *Guides* and Rule 20 in formulating a WPI rating was incorrect. Further, she incorrectly determined that the West Virginia Code of State Rules §

3

85-20-64.8 limited the disability percentage for Mr. Dixon's above the knee amputation to 45% since the loss of thigh is entitled to the statutorily prescribed 50% PPD award.[2]

The Board affirmed the claim administrator's order as it determined that Mr. Dixon did not submit medical evidence refuting Dr. Lultschik's impairment rating. However, in his protest to the Board, Mr. Dixon submitted medical reports from Dr. Salloum and Jasdeep Dalawari, M.D., dated October 9, 2020, and May 27, 2021, denoting that Mr. Dixon underwent a revisionary above the knee amputation on August 21, 2020, resulting in an above the knee amputation.[3] The Old Fund filed a closing argument dated September 8, 2023, with the Board in which it asserted that the allowable WPI is limited to 45%, which Mr. Dixon was previously awarded for amputation of the right leg.

On appeal, the Old Fund now concedes that Mr. Dixon lost a "substantial" portion of his thigh in the second amputation and that under West Virginia Code § 23-4-6(f), loss of a thigh is considered a 50% disability. Upon review, we find that the Board was clearly wrong in affirming the claim administrator's order that was based upon Dr. Lultschik's erroneous impairment determination that failed to acknowledge the statutory disability percentage applicable to the revision amputation. We are also mindful that the Supreme Court of Appeals of West Virginia has held that permanent partial disability awards are to be made solely on the basis of a physician's impairment evaluation. See *Repass v. Workers' Comp. Div.*, 212 W. Va. 86, 95, 569 S.E.2d 162, 171 (2002). Thus, without a valid IME that properly considers and applies the statutory disability percentages, the Board should have remanded the claim to the administrator for a new IME.

---

[2] We note the facts and law considered by the Supreme Court of Appeals in *Reed v. State Comp. Comm'r*, 112 W. Va. 524, 166 S.E. 282 (1932) are remarkably similar to the present case. Although the pertinent language that is now codified at West Virginia Code § 23-4-6(f) resided in a different Code section at the time *Reed* was decided, it is identical to the language the Court in *Reed* considered. In *Reed*, the claimant appealed an award of 45% PPD for the amputation of his leg four inches above the knee, arguing that he was entitled to a 50% PPD award. The Court agreed, holding that:

> No distinction is made between the loss of the whole thigh below the hip joint, and the loss of the part of the thigh below the hip joint by the statute. We are of the opinion that relator is entitled to compensation for the loss of a thigh prescribed by law to be a disability of 50 per cent. instead of the 45 per cent. which was awarded him.

[3] Although Mr. Dixon submitted evidence showing that his revision surgery resulted in loss of a portion of his thigh, had he filed even a simple closing argument with the Board, plainly asserting that he was entitled to a further statutory award for the amputation, perhaps the Board would have better understood the point he was trying to make.

The claim administrator's order was based upon an erroneous IME. The Board erred in affirming the claim administrator's order that failed to acknowledge the statutory disability awards prescribed by West Virginia Code § 23-4-6(f).

Accordingly, we vacate and remand the Board's November 20, 2023, order with directions that it remand the claim to the claim administrator with instructions to refer Mr. Dixon for a new IME that properly considers West Virginia Code § 23-4-6(f).[4]

Vacated and Remanded with Directions.

**ISSUED:** July 30, 2024

**CONCURRED IN BY:**

Judge Charles O. Lorensen
Judge Daniel W. Greear

Chief Judge Thomas E. Scarr not participating

---

[4] Given that a new IME will occur, we need not address the issue of impairment related to the SFA occlusion.