CREAMER MCDANIEL *v.* WORKMEN'S COMPENSATION APPEAL BOARD

·(No. 8545)

Submitted April 13, 1937. Decided May 11, 1937.

*Christie & Christie*, for appellant.
*Crockett & Tutwiler*, for Pocahontas Fuel Co.

KENNA, PRESIDENT:
Creamer McDaniel was injured while loading coal in the mines of Pocahontas Fuel Company on August 22, 1934. In 1903, while working for the same employer, he had suffered an injury to his left arm, resulting in its

amputation at the shoulder. Upon his application for compensation due to the injury of August 22, 1934, he was given a twelve per cent award which, after hearing, was increased by the Commissioner to fifteen per cent. Upon appeal, the Appeal Board allowed a thirty-seven per cent award and the case is here upon the claimant's appeal from the latter award, his contention being that under the proof he is entitled to a permanent total disability rating.

From 1903 to the date of his second injury, claimant had worked as a coal loader. While loading coal he slipped and fell, striking the shoulder of his right arm against some timbers. He went to the company doctor who reported that there was nothing wrong, thinking that he might have a touch of arthritis. He also went to the Bluefield Sanitarium and was examined September 5, 1934, with the same result. Early in the following January, the arm developed a bulging mass in the upper area of the biceps, and upon again reporting to the company doctor, he was sent to the hospital to be operated upon for a parting of the tendon of the long head of the biceps muscle. The operation was performed, it being necessary to fasten the tendon of the long head of the biceps to the short head. The result was estimated at a fifty per cent loss of lifting and weight-bearing function in the right arm.

Claimant testified that since his second injury he had unsuccessfully tried to perform various sorts of work such as sawing, planing, hoeing and using an ax, and that for a period he had been employed upon the tipple of the Pocahontas Fuel Company where his duties were to run a coal washer. This required, among other things, that he press a button to start and stop the washer and that he use an aluminum dipper weighing seven or eight pounds to take the scum and dirt off the surface of the water in the washer. These duties, the claimant said, he could perform without great pain and difficulty. This occupation further required, however, that he throw a lever whenever the washer clogged, for the purpose of flushing it out. This, he said, pulled or jerked his arm

and resulted in such pain that he was compelled to give up that work.

The medical opinion as to the percentage of disability is not in entire accord. Dr. J. E. Brown and Dr. A. H. Hoge both testified for the claimant and stated that in their opinion, as an ordinary day laborer, claimant was one hundred per cent disabled, but that he could doubtless perform work around a pump house or other light forms of work around the mine. These doctors indicated that they did not believe the operation had been a complete success and that there likely remained some unattached muscle. Dr. Luttrell, the physician for the employer, and Dr. D. L. Hosmer, the surgeon who performed the operation upon claimant's arm, testified that claimant could do light work around the mines or any work that did not require heavy use of the arm. There is no testimony showing the availability of such work to this claimant other than that of the employment upon the tipple, which he testified he could not discharge. The last named doctors placed the claimant's loss or disability at from twelve to twenty-five per cent.

Dr. Hosmer testified that the disability of the claimant would be the same whether he did clerical or manual work, and the other doctors seem, more or less, to have had the same notion. This shows a confusion in the minds of the medical experts between functional impairment and the loss of earning power, which loss constitutes the disability contemplated by the Compensation Law.

The claimant has always worked as a day laborer. He got as far as the fourth grade in school.

On the record before us, there are two main points advanced by the claimant, who is the appellant: (1) That the claimant is now totally and permanently disabled within the meaning of the act; and (2) that it is proper, in arriving at this conclusion, to take into consideration the loss of his left arm in 1903.

The employer contends that in arriving at the percentage of disability due to the accident in April, 1934, the loss of the left arm in 1903 should be excluded, and the disability calculated as though the injury of 1934 had

occurred to an unimpaired man and that on that basis the thirty-seven per cent disability allowed by the Compensation Appeal Board cannot be justified.

On the question of whether the former injury should be included or excluded in figuring the percentage of disability that resulted from the 1934 accident, there is conflict of authority. The majority view undoubtedly is that the former injury should be included. (See *Congoleum Nairn, Inc.* v. *Brown*, 158 Md. 285, 148 A. 220, 67 A. L. R. 780, and the cases cited in the note beginning at page 785, and particularly the cases annotated at page 794 having to do with the previous loss of a member.) Although the question of the previous loss of a member of the body, as it affects the disability rating upon a later injury, has not been before this court, the undoubted trend of this court's holdings in similar cases accords with the majority view. In *Caldwell* v. *Compensation Commissioner*, 106 W. Va. 14, 144 S. E. 568, the claimant had received a gunshot wound twelve years previous to his industrial injury, and the medical testimony was to the effect that the previous injury undoubtedly aggravated the injury upon which his claim to compensation was based. Some of the medical testimony seems to have gone further and to have been to the effect that his disability was due mainly, if not entirely, to the previous injury. Nevertheless, the court reversed the order of the Commissioner denying compensation and remanded the case for a proper award based upon his disability, considering both injuries. This case seems to furnish a striking illustration of the fact that the inclusion of the former injury rests upon the consideration of the individual and upon the prevention of the individual becoming a public charge, rather than upon the obligation of industry to care for its casualties, because in the instance before the court, the former injury had not been incurred in industry.

In the case of *Lockhart* v. *State Compensation Commissioner*, 115 W. Va. 144, 174 S. E. 780, an infection in a formerly injured ankle got into the employee's blood stream, causing his death. It was shown that but for the

employee's debilitated condition caused by paint poisoning contracted in the course of and resulting from his employment the infection would not have caused death. Compensation was awarded.

We have no hesitancy, therefore, in holding that in the case at bar the Commissioner and the Workmen's Compensation Appeal Board should have considered both the loss of the claimant's arm in 1903 and the injury to his other arm in 1934 in arriving at his present percentage of disability.

Although we believe that the two injuries are to be taken into consideration in arriving at the claimant's percentage of disability and in the making of an award to be paid to the claimant, we do not believe that it necessarily follows that the Compensation Commissioner, in charging the award against the rating of the employer, is obliged to charge the employer with the full amount of whatever award may be paid to the claimant. The adjustment between the Compensation Commissioner and the claimant is one thing: that between the Compensation Commissioner and the employer is another thing. The 1935 statute (Acts 1935, ch. 78), not applicable to this case, recognizes this distinction (Section 9a). Since the statutory adjustment is not applicable to this case, we believe that in the event of a permanent total disability award to the claimant, it would be manifestly unfair to charge this employer with the entire award, and that such a course would have a tendency to prevent the employment in industry of men who may be suffering from a physical defect due to some previous injury. The earning capacity of such men perhaps has not been seriously impaired, but nevertheless their employment, in view of the possibility of future injury, constitutes to the employer a very much more serious risk than would the employment of an unimpaired person. In the event of the payment to this claimant of a total permanent disability award, we believe that it would be proper for the Commissioner to consider, in arriving at the effect of his second injury upon the rating of his employer, that the 1934 injury was inflicted upon an un-

impaired individual and to charge the employer's account accordingly. After that has been paid, the balance of the award made to the claimant should be paid out of the general fund without specifically charging this employer therewith.

Passing to the remaining question of whether this claimant should receive a total permanent disability rating at this time, we are of the opinion that the case should be remanded to the Compensation Commissioner with direction that it be further developed along this line. There seems to be some confusion in the medical testimony before us, but there does not seem to be any serious doubt that this claimant cannot follow the same employment, or any other employment requiring the same muscular exertion as the employment that he was following on the date of his last injury. The testimony indicates that he could do light work in certain employments to be found about coal mines. If these lighter employments can be said to be ordinarily available to a person in the situation of this claimant, then his present condition could hardly be said to constitute a permanent total disability. On the other hand, if these lighter employments are such as would not ordinarily be available to a person in the situation of claimant and if he is incapacitated by his injury from working otherwise, then his would be a total permanent disability. The fact that he might get occasional and rare work at lighter employment which he could discharge, or that through some special arrangement such work may be made temporarily available to this one individual, does not prevent him from receiving a permanent and total disability rating. But the fact that he could do light remunerative work that was ordinarily available to a person in his situation, would prevent him from receiving a total and permanent disability rating.

Inasmuch as this claimant's condition does not fall within any of the specific definitions of disability found in the statute, the Commissioner must arrive at that disability with the statutory standards as a guide, but based upon his own judgment in applying those standards to

the facts and circumstances surrounding the claimant's condition.

On the basis of what has been said, the case will be remanded to the Compensation Commissioner with direction to make such award, taking into consideration the loss of the plaintiff's left arm in the year 1903, as he may deem proper under all of the facts and circumstances of the case.

*Reversed and remanded.*

FOX, JUDGE, concurring:

I concur in the result, which remands the case for further development, and I find no fault with the syllabus. The body of the opinion gives me some concern. Being of the opinion that the record does not show a case of total permanent disability, but only partial disability arising out of an injury to an arm, I am unable to agree that the claimant is entitled to full compensation, for the remainder of his life, for an injury sustained in 1903, and before the compensation law was enacted, and I think the opinion would justify such an award. While I would give consideration to such former injury, as bearing on the result of the recent injury, and affecting the ability of the claimant to perform work, I would limit such consideration to the ascertainment of the percentage of disability created by the recent injury, and within the total compensation allowable therefor in case of a normal man. It is quite apparent that the claimant having lost one arm in 1903, an injury to the remaining one is more serious than it would have been had the earlier injury not been sustained; but I cannot agree that, in a case where the injury is less than the total loss of the remaining arm or its equivalent, we are warranted in allowing compensation beyond the total which may be awarded for the recent injury. If, under the holding of the court, compensation be allowed beyond that permissible for the recent injury, such compensation necessarily covers an injury sustained more than thirty years ago and before compensation laws were in effect in this state. If this were a case where the loss of the remaining arm

resulted in total disability, compensation might be justified on that basis rather than for the loss of a particular member; but where the injury only lessens the use of the remaining arm, as I think this case discloses, I am unable to see that we should give consideration to the former injury except as the same may tend to justify an increase of compensation for the disability created by the recent one.