WILLIE DILLON

*v.*

STATE COMPENSATION COMMISSIONER

AND OLGA COAL COMPANY, *A Corporation*

(No. 12071)

Submitted January 11, 1961.   Decided March 28, 1961

270

*Crockett, Tutwiler & Crockett, Charles A. Tutwiler,* for appellant.

*Patrick J. Flanagan,* for appellees.

BROWNING, JUDGE:

This is an appeal from an order of the Workmen's Compensation Appeal Board of July 13, 1960, by which the State Compensation Commissioner's order of March 31, 1960, refusing to reopen the case, was reversed.

On August 26, 1958, claimant received an injury to his left middle finger resulting in the loss by amputation of two phalanges of that finger. On April 8, 1959, he was granted a five per cent permanent partial disability to which there was no objection, and he was later paid the sum of money represented by that award. On March 26, 1960, claimant submitted a petition for

reopening of his claim alleging in substance that: (1) On June 19, 1925, he had lost part of his left index finger in an industrial accident for which he was awarded a ten per cent permanent partial disability; and (2) since he had lost both the index and middle fingers of the left hand he is entitled to an award of twenty per cent permanent partial disability under the provisions of Code, 23-4-6(d), as amended.

In an explanation of its order of reversal and remand of the case to the Commissioner the Board said in its opinion, which by statute it is required to write in all cases passed upon by it, the following:

> "Claimant contends, in his application for a reopening, that the statute (Code 23-4-6d) makes the loss of an index finger and middle finger a 20% disability and that since he has only been paid for a 15% disability he is entitled to an additional award of 5%.

> "The Board is of opinion that claimant's contention is tenable here. The statute (Code 23-4-9b) so provides. It follows that claimant's application makes a prima facie showing and this Board so holds."

In view of this holding of the Board perhaps a review not only of the legislative history of Section 9(b), but the judicial history as evidenced by the decisions of this Court is indicated. Section 9(b) was first added to Article 4 of Chapter 23 by the Acts of the Legislature, 1937, Chapter 104, the title of the section being "Waiver By Employee Having Physical Impairment.", and provided, in substance, that where an employee had a definitely ascertainable physical impairment, originating otherwise than from an injury received in the course of and resulting from his employment, and thereafter received an injury in the course of and resulting from his employment, the disability which he had prior to his compensable injury could be waived. The section provided for a written waiver. The section as originally enacted is as follows: "Where an employee has a definitely ascertainable physical impairment originating otherwise

than from an injury received in the course of and resulting from employment, such impairment, and the effect thereof, in case of injury as hereinafter set forth and any aggravation thereof on account of such injury, may be waived by said employee, notwithstanding any other provisions of this chapter, but such waiver shall be in the manner hereinafter provided. If said physical impairment shall be so waived, then in the event that such employee shall thereafter receive an injury in the course of and resulting from his employment, such physical impairment, and the effects thereof, and any aggravation thereof, shall not be taken into consideration in fixing the amount of compensation allowed by reason of such injury, and such compensation shall be awarded only in the amount that would have been allowable had such employee not had such pre-existing physical impairment. A waiver, in order to be valid under this section, shall meet the following requirements: (1) It shall be in writing, signed prior to injury by the employee, and either acknowledged before an officer duly qualified to administer oaths in this state, or be witnessed by two persons, neither of whom shall be the employer, or any officer or director of employer; (2) It shall be accompanied by a certificate of a duly licensed physician of this state or of another state, not connected with the employer, which certificate shall contain a statement that such physician has examined the said employee, has found such impairment to exist, that such impairment is definitely ascertainable, and a statement of the character and nature of such impairment.''

The case of *McDaniel v. Workmen's Compensation Appeal Board*, 118 W. Va. 596, 191 S. E. 362, was decided by this Court on May 11, 1937. It will be noted that Section 9(b) was added by the Acts of the Legislature which convened in January of that year. However, the injury for which McDaniel sought compensation occurred on August 22, 1934. He received an injury to his right arm for which the Commissioner

gave him a twelve per cent partial disability award, and for which the Appeal Board increased the award to thirty-seven per cent. The evidence showed that McDaniel had received an injury while employed by the same employer in 1903, resulting in the amputation at the shoulder of the left arm. The Court, in discussing the question of whether the former injury should be included or excluded in figuring the percentage of disability that resulted from the 1934 injury, reviewed two earlier West Virginia cases, and other a u t h o r i t y, and concluded: "We have no hesitancy, therefore, in holding that in the case at bar the Commissioner and the Workmen's Compensation Appeal Board should have considered both the loss of the claimant's arm in 1903 and the injury to his other arm in 1934 in arriving at his present percentage of disability." The single syllabus point of that case reads: "In determining the permanent disability of a claimant under the Workmen's Compensation Act, the fact that the claimant had lost an arm prior to the injury upon which the claim rests should be taken into consideration." This further pertinent statement was contained in the opinion of that case: "* * * In the event of the payment to this claimant of a total permanent disability award, we believe that it would be proper for the Commissioner to consider, in arriving at the effect of his second injury upon the rating of his employer, that the 1934 injury was inflicted upon an unimpaired individual and to charge the employer's account accordingly. After that has been paid, the balance of the award made to the claimant should be paid out of the general fund without specifically charging this employer therewith." A review of the pertinent provisions of Chapter 23, in effect at the time of the *McDaniel* decision, and at the present time, raises a grave doubt as to whether the Commissioner has under his jurisdiction a "general fund". In 1939, by Chapter 137, Acts of the Legislature, Regular Session, 1939, the section was amended by the addition of this language:

"* * * This section shall only apply to definitely ascertainable physical impairments, either:

"(a) Originating, either before or after October first, one thousand nine hundred thirteen otherwise than from an injury received in the course of and resulting from employment, or

"(b) Originating prior to October first, one thousand nine hundred thirteen, from an injury in the course of and resulting from employment, or

"(c) Originating after October first, one thousand nine hundred thirteen, from an injury in the course of and resulting from employment by an employer, who at the time of said injury had not elected to comply with, or was not in good standing under, the workmen's compensation law of West Virgina, or

"(d) Originating in an injury of whatsoever origin whenever received, occurring without the State of West Virginia, except injuries received after October first, one thousand nine hundred thirteen, in the employ of a subscriber in good standing under the compensation fund of West Virginia in the course of and resulting from temporary employment without the state as defined and limited by section one, article two of this chapter.

"If any employee, or person seeking employment, who, as a part of the written waiver hereinbefore provided for, or by separate writing signed by him, filed with the employer, or prospective employer, shall make a statement of fact as to the origin of any physical impairment, such employee, or prospective employee, shall be bound by said statements, and shall be estopped from denying the truth of the facts stated therein."

On March 21, 1939, this Court decided the case of *Wheeling Metal and Manufacturing Company v. Workmen's Compensation Commissioner*, 121 W. Va. 155, 2 S. E. 2d. 252. The claimant, Wood, had received an injury in January, 1938, "in the course of and resulting from his employment", which was described as a severe injury to his left hand. This claimant had received an injury in 1912, while working for the same employer, which resulted in the amputation of his right forearm about two inches below his elbow. The

Commissioner awarded the man total permanent disability, and this award was affirmed by the Appeal Board. The only issue before this Court was whether the decision of the Commissioner to charge the employer with the sum of $4,000.00, representing at that time the average cost of a total disability award, was justified. It will be noted that the second injury to this claimant occurred after the effective date of the 1937 Acts, which became Section 9(b), Article 4, Chapter 23, heretofore quoted verbatim. The claimant had not executed a waiver as provided by that section under its provisions at that time. This Court held, however, that the total permanent award to the claimant should be affirmed, but that the charge against the account of the employer should be made in the same manner as in the *McDaniel* case. This is the language of the opinion: "* * * In conformity with the rule of the *McDaniel* case, the Commissioner should have charged against the employer such sum as would be proper if the second injury had been suffered by an unimpaired employee, and the residue of the award should be charged against the general fund of which the Commissioner has supervision, that is to say, any monies under his official control and at his disposal, and whether the same be withdrawn from the working fund or surplus fund (Code, 23-3-1) is a matter for decision by the Commissioner in the proper discharge of his office." With reference to Section 9(b), this Court's discussion of its meaning was carried into the 3rd Syllabus Point which states: "Code, 23-4-9(b) provides for waiver by an employee of a definitely ascertainable physical impairment 'originating otherwise than from an injury received in the course of and resulting from employment.' This language is construed to include any definitely ascertainable physical impairment originating from noncompensable injury." The Court in its opinion discussed also Section 9(a) of Article 4 of Chapter 23, which was in effect at that time, as amended by the Acts of the Legislature, 1935. This section was repealed in its entirety in 1945, but the legislative de-

velopment of this question requires a quotation of the provisions of Section 9(a): "Where an employee in the course of and resulting from his employment has suffered the loss, or loss of use of a hand, arm, foot, leg or eye, and receives, in the course of and resulting from his employment, while employed by the same employer, injury resulting in total permanent disability, the commissioner in estimating the total cost of such permanent total disability shall allow the subscriber credit on his account for the partial permanent disability already received. Where an employee, in the course of and resulting from his employment, has suffered the loss, or loss of use of a hand, arm, foot, leg or eye, and in the event of subsequent accidental injury received in the course of and resulting from his employment while employed by another employer, resulting in total permanent disability, the cost of such total permanent disability shall be paid by the commissioner out of any funds in his hands and at his disposal, after charging to said last employer an amount equal to the partial permanent disability attributable to the last injury, independently of the pre-existing impairment." Upon the repeal of Section 9(a) it should be noted that at the same session the Legislature amended Section 1 of Article 3, Chapter 23 to include the "second injury hazard" with "the catastrophe hazard" and provided that any sum paid to an employee as a result of a total permanent disability award where only a portion thereof was charged to his employer would be paid out of this fund. This portion of the language of the 1945 amendment will be quoted: "If an employee who has a definitely ascertainable physical impairment, caused by a previous injury, irrespective of its compensability, becomes permanently and totally disabled through the combined effect of such previous injury and a second injury received in the course of and as a result of his employment, the employer shall be chargeable only for the compensation payable for such second injury. * * *" It will be noted that in both the *McDaniel* and *Wheeling Metal* cases, the second, compensable injury,

when added to the previous non-compensable injury, resulted in total disability.

On September 19, 1944, this Court decided the case of *Hardin v. Compensation Commissioner*, 127 W. Va. 56, 31 S. E. 2d. 436. The claimant therein suffered a compensable injury on the 26th day of June, 1942. The injury was to his middle finger, as well as the ring and small fingers, of his right hand. Previous to this, as a result of a war wound, the claimant had suffered partial loss of his right index finger which was not injured in the industrial accident of June 26, 1942. The claimant had not executed a waiver as provided by Section 9(b) in effect at that time. This Court held that the claimant's disability to his right hand must be computed upon the basis of his compensable injury, taking into consideration his World War I injury to his right index finger. A different conclusion as to chargeability against the employer was reached, which meant that the employer would be charged with the total disability to the claimant's hand, including the loss of an index finger in World War I. It is significant that at its next regular session, a few months after this decision was handed down by this Court, the Legislature amended the provisions of Section 9(b) by eliminating the waiver requirement thereof, and provided that if an employee received a compensable injury, and such employee had a definitely ascertainable physical impairment originating as provided therein, such non-compensable disability should not be considered in arriving at the percentage of disability to which the claimant was entitled unless the previous non-compensable injury and the compensable injury resulted in total permanent disability. Chapter 131, Acts of the Legislature, Regular Session, 1945.

Code, 23-4-9(b), at present, reads as follows: "Where an employee has a definitely ascertainable physical impairment originating as hereafter set forth in this section, then in the event that such employee shall thereafter receive an injury in the course of and re-

sulting from his employment, unless such injury re-
sults in total permanent disability within the mean-
ing of section one, article three (§ 2523) of this
chapter, such physical impairment, and the effect
thereof, and an aggravation thereof, shall not be taken
into consideration in fixing the amount of compensa-
tion allowed by reason of such injury, and such
compensation shall be awarded only in the amount
that would have been allowable had such employee
not had such pre-existing physical impairment. This
section shall only apply to definitely ascertainable
physical impairments, either: * * *." The only change
made in this section by Chapter 165, Acts of the
Legislature, Regular Session, 1947, inserted these
words: "unless such injury results in total permanent
disability within the meaning of section 1, article 3,
of this chapter.", in the first sentence. From the fore-
going it is obvious that Section 9(b) was originally
enacted and subsequently amended by succeeding Leg-
islatures in view of the judicial interpretations in the
*Wheeling Metal* and *Hardin* cases, solely for the pur-
pose of disallowing, at first, by permitting the em-
ployer to secure a waiver, and presently by strict in-
junction regardless of waiver, any consideration by
the Compensation Commissioner of any pre-existing
non-compensable definitely ascertainable physical im-
pairment, in arriving at the percentage of permanent
disability occasioned by a subsequent compensable in-
jury, except in those instances where the second in-
jury results in total permanent disability, which, as
hereinbefore s t a t e d, is provided for in 23-3-1, as
amended. Consequently, we are of the opinion that the
section has no application to the instant case.

The issue presented in the instant case involves two
compensable injuries, one received on June 19, 1925,
and the second on August 26, 1958. Therefore, we must
look to other applicable provisions of the Workmen's
Compensation Law as contained in Chapter 23 to as-
certain whether these two injuries should be com-
bined in ascertaining the claimant's disability.

Code, 23-4-6, as amended, is entitled: "Classification of Disability Benefits." Subsection (d) designates the percentage of disability which shall be awarded to an injured employee who suffers "the total loss by severance of any of the members named" therein, and includes many combination losses of two or more such "members". The subsection begins with this language: "If the injury results in the total loss by severance of any of the members named in this subdivision, the percentage of disability shall be determined in accordance with the following table, and award made as provided in subdivision (c) of this section: * * *" In this subdivision are these pertinent provisions:

" * * *

"The loss of middle or second finger (one phalanx) shall be considered a three per cent disability.

"The loss of middle or second finger shall be considered a seven per cent disability.

"The loss of index or first finger, (one phalanx) shall be considered a six per cent disability.

"The loss of index or first finger shall be considered a ten per cent disability.

" * * * * "

Although the middle or second finger has three phalanges, there is no provision in Subsection (d) fixing the disability for the loss of *two* phalanges of that digit. Subsection (f) of this section provides: "The award for permanent disabilities intermediate to those fixed by the foregoing schedule and permanent disability of from one per cent to eighty-four per cent shall be in the same proportion and shall be computed and allowed by the commissioner.", and Subsection (g) provides: "The percentage of all permanent disabilities other than those enumerated in subdivisions (c), (d), (e), and (f) of this section shall be determined by the commissioner, and award made in accordance with the provisions of subdivision (c)."

Inasmuch as the statute does not fix a specific disability for loss of two phalanges of the middle finger, and in view of the authority vested in the Commissioner under the provisions of Subsections (f) and (g), the fixing of a five per cent award for the claimant's injury of August 26, 1958, to which there was no protest, would constitute a finality with regard to the disability arising out of that injury if the claimant had not, thirty-three years previously, lost part of the adjoining index finger in a compensable injury. Subsection (d) also provides: ''The loss of index and middle fingers shall be considered a twenty per cent disability.''

This claimant in the two injuries did not suffer ''the total loss by severance'' of his index and middle fingers. Therefore, this statutory provision is not applicable to his disability. If the Legislature had desired to fix a per centum of disability for partial loss of the index finger and partial loss of the middle finger in separate injuries it could easily have done so. On the contrary the language is clear that Subsection (d) is applicable only where ''the injury results in the total loss by severance'' of the members of the body specifically referred to therein.

The Commissioner, the Appeal Board and this Court have the authority to construe the provisions of this section, but all are forbidden by the separation of power provisions of the Constitution of this State to amend the section under the guise of construing or interpreting it.

The Appeal Board upon its interpretation of the provisions of Code, 23-4-6(d), as amended, determined that the claimant was entitled to an additional five per cent award, (to equal the statutory percentage of twenty per cent for the combination loss), and, therefore, his application had disclosed ''cause for a further adjustment'' of his claim under the provisions of Code, 23-5-1(a), as amended. The succeeding section, Code, 23-5-1(b), as amended, provides that such ap-

plication shall not be sufficient "to establish a prima facie cause for reopening the claim." if "such application fails to disclose a progression or aggravation in the claimant's condition, or some other fact or facts which were not theretofore considered by the commissioner in his former findings, and which would entitle such claimant to greater benefits than he has already received, * * *."

It is immaterial whether the application for reopening presented to the Commissioner a "fact" which he had not considered in granting the five per cent award for loss of two phalanges of claimant's middle finger, to-wit: the partial amputation of claimant's adjoining index finger in a compensable injury in 1925, unless such "fact" would entitle the claimant to greater benefits than he had "already received". The claimant received the statutory award for complete loss of his index finger resulting from the injury of 1925, and an award for the August 26, 1958, injury resulting in the amputation of two phalanges of the middle finger, which was not in conflict with any specific statutory award, and which award the claimant accepted with out protest. The statute makes no provision for the combined "loss" suffered by the claimant in the two separate injuries greater than the total per centum of disability provided for each "loss". Therefore, a proper showing for "a further adjustment of his claim" was not alleged in the petition for reopening thereof under the provisions of Code, 23-5-1(a), and 23-5-1(b), as amended.

The order of the Workmen's Compensation Appeal Board of July 13, 1960, is reversed, and the order of the State Compensation Commissioner of March 31, 1960, refusing to reopen this claim, is reinstated.

*Reversed and remanded.*