201 S.E.2d 102 (1973)
Amel POSEY
v.
STATE WORKMEN'S COMPENSATION COMMISSIONER and Rolland Glass Company.
No. 13397.
Supreme Court of Appeals of West Virginia.
Submitted September 11, 1973.
Decided December 11, 1973.
*104 C. R. Nutter, Clarksburg, for appellant.
Charles G. Johnson, Clarksburg, for appellee.
*103 SPROUSE, Justice:
This is an appeal by the claimant, Amel Posey, from an order of the Workmen's Compensation Appeal Board, which granted the claimant a 40 percent permanent partial disability award as a result of an injury to his left knee. The Appeal Board reversed a decision of the State Workmen's Compensation Commissioner granting the appellant a 25 percent permanent partial disability award.
The claimant contends, however, that he should be awarded a permanent total disabilty award. The appellee, Rolland Glass Company, contends that the action of the Appeal Board should be affirmed for two reasons: First, the evidence clearly supports the Appeal Board's decision, and secondly, even if this was not so, the appellant wrongfully refused to submit to corrective surgery on his knee and, therefore, should not be entitled to a permanent total disability award. The employer further contends that, if the Workmen's Compensation Appeal Board is reversed, and the claimant is awarded a total disability, the payments should be made from the second injury reserve fund.
Amel Posey, the claimant, a 55-year old man, worked continuously for the appellee, Rolland Glass Company, from 1945 until the time of his injury in January, 1969. With the exception of a six-month period working as a laborer for another glass company and his period of military service during which he worked as a longshoreman loading and unloading ships, the claimant has had no other work experience. He has no training or experience except as a manual laborer. He has a fifth grade education and can barely read and write.
The testimony in the case is relatively simple and consists solely of the testimony of the claimant and two doctors: Dr. Robert S. Wilson, who examined the claimant for the Commissioner and the employer, and Dr. R. T. Humphries, who was the treating and operating physician and who testified on behalf of the claimant.
The issue in this case does not turn on the compensability of the claimant's injury, but revolves solely upon the degree of his disability. There is no dispute that Posey "stepped in a hole" and twisted his left knee on January 13, 1969, while in the employ of the appellee. It was a severe injury which resulted in the surgical removal of a part of the internal semilunar cartilage. A second operation was performed, approximately a year later, to remove adhesions which had formed in the same area.
Complicating the disposition of this case are previous injuries to the left knee and leg incurred by the claimant. In 1950, the claimant fractured the femur of his left leg "into the knee joint" in an automobile accident. The claimant's left leg was again injured in 1954 as a result of a work-related accident which, although compensable, apparently was not submitted for a permanent disability rating. The extent of the second injury is not clear from the record and, therefore, is not important to the disposition of this case. The 1950 injury, however, does pose problems which must be resolved. The fact that the claimant was treated by Dr. Humphries for each of the three injuries simplifies somewhat the issue of medical facts involved.
When the claimant fractured his leg in 1950, Dr. Humphries performed surgery upon the leg in order to place a wire *105 through the tibia for traction and to manipulate two broken bone fragments in the knee joint. Approximately a month after the surgery a cast was applied to the leg. According to Dr. Humphries' testimony, the 1950 injury resulted in some degeneration in the claimant's knee and made it more susceptible to future injury.
Dr. Humphries testified that, while the injury to the claimant's leg in 1969 was principally caused by the claimant's accident, the damage to the knee might not have occurred, or might not have been as serious, except for the injury which had occurred in 1950. When Dr. Humphries operated on the claimant's leg in 1969, he found an existing degeneration of the cartilage, the posterior portion of which, the semilunar cartilage, was torn. During the surgery, Dr. Humphries removed the cartilage, but he testified that he could not determine whether the tear was caused by recent injury or had preexisted it. He testified, however, that based on the claimant's history, and his ability to work without pain during the period of years after his automobile accident, he believed the tear which caused removal of the cartilage to be a result of recent injury, although a small tear may have preceded it.
Dr. Humphries was of the opinion that the claimant sustained a 40 percent disability as a result of the 1969 accident. The doctor was also of the opinion, however, that the claimant could no longer perform manual labor or any work which would require standing and walking a shift of seven or more hours a day. He stated categorically that the claimant could not continue to do the work he had previously performed, and could perform no work requiring him to stand.
Dr. Humphries explained the 40 percent disability rating: "I don't use the ability to work. That is not usually put in these reports. If you lose an index finger it is a 10 percent disability there, but you don't say that he can't use his index finger and all that. The Commissioner has a certain rule and regulation concerning the loss of a part and the disability rating is based on that and not on the ability of him to work."
Dr. Robert S. Wilson did not treat Posey, but examined him for the employer and for the Commissioner. He reported and testified that in his opinion the damage to the claimant's knee entitled him to an 18 percent disability award. Dr. Wilson, however, testified on cross-examination that: "When I examined him on November 17, 1971 my opinion was that he was not then able to engage in an occupation which required him to stand and work for eight (8) hours."
The question of determining to what extent, by degree or percentage, an injured worker is disabled from an injury is as troublesome in the law as it is in medicine. Since the earliest industrial compensation laws, medical experts have struggled to define disabilities from a quantitative medical standpoint while lawyers and courts have struggled to reach a just method of compensating an injured worker without penalizing an employer or overburdening a workmen's compensation fund with unjustified or exaggerated claims.
Certainly, if a workman is seriously and permanently injured, there is no way he can be truly compensated for the loss of his God-given physical and mental abilities. Nor has society nor the combined expertise of law and medicine matured sufficiently to secure him in the approximate financial position he occupied prior to the disability. The best that industry and the law can do is, from the fruits of industrial production, pension him at least at a subsistance level.
In attempting to achieve a method of compensating an injured workman to the percent of disability suffered, American courts have used primarily two concepts  the "whole man" theory and the theory of loss of earning capacity. The former concept involves an allocation of a percentage of impairment for the loss of use of a part of the body and an award to the disabled claimant of that percentage of permanent *106 disability. The other principal theory takes into consideration the extent to which the injury impairs earning capacity. In many jurisdictions elements of both theories are utilized in conjunction with such other considerations as loss of efficiency both in work and in normal life activities. 2 Larson, Workmen's Compensation Law 7-17 (1970); 58 Am.Jur., Workmen's Compensation, Section 281, page 777; 99 C.J.S. Workmen's Compensation § 296, pages 1033-1046.
This jurisdiction has been committed principally to the so-called "whole man" theory, although there appears to have been some deviation from that theory in some of our cases. 2 Larson, Workmen's Compensation Law 12 (1970).
One of these cases decided by this Court involves a claimant who had fractured a leg and had been granted an award equal to the statutory maximum scheduled disability for the severance of a leg below the thigh. The claimant petitioned for reopening of his case, and this Court ordered that the claimant be permitted to reopen, holding that disability to a claimant caused by an injury, as distinguished from loss by severance, is not limited to the amount fixed by statutory schedule for that severance. The claimant demonstrated by medical testimony that the functioning of his body, because of his disability, had caused impairment to other parts of the body. The decision permitted a reopening to litigate a percentage award for this other impairment to the body as a whole. Felty v. Compensation Commissioner, 124 W.Va. 75, 19 S.E.2d 90.
In Walk v. State Compensation Commissioner, 134 W.Va. 223, 58 S.E.2d 791, involving an injury to the genitals of a workman, it was held that compensation was not restricted to compensation for loss of earning power. The Court found that the employee was entitled to compensation, although his injury caused no present loss of earnings, because his physical efficiency to work had been impaired. The decision also indicated that loss of the claimant's ability to perform a sexual act could be considered in determining the disability award. Likewise, in Gay Coal & Coke Company v. Workmen's Compensation Commissioner, 121 W.Va. 200, 2 S.E.2d 265, the Court held that the employee's right to total disability compensation was not defeated by the fact that he returned to work and received wages. The evidence in the case disclosed that the claimant had as a result of injury, lost his right leg below the knee and the use of his left arm, but was able to continue to work at a "sitdown job" in a lamp house. The Court held, that despite the claimant's post injury employment, he was totally disabled from doing manual labor, the test of disability being the impairment of physical efficiency. See also Ashworth v. State Compensation Commissioner, 117 W.Va. 73, 77, 183 S.E. 912, 914.
However, in Stewart v. State Workmen's Compensation Commissioner, W.Va., 186 S.E.2d 700, the Court considered factors which related the injury, although not totally disabling of itself, to the future earning capacity of the claimant and granted him an award of total permanent disability. The Stewart case involved the claim of a forty-nine year old coal miner who had an eighth grade education and possessed no skill for work other than heavy manual labor. The claimant in Stewart fractured his leg when he was caught by a loading machine and could not move without the aid of braces or crutches.
Whatever else appears from the numerous cases in West Virginia dealing with the appropriate percentage of disability for a given injury, it is clear this Court has considered the problem on a case-by-case basis. This is the proper approach in an area of law where facts vary so greatly and the question of the percentage of disability for a given injury is largely a factual determination. Consideration must be given not only to the impairment of the employee's earning capacity, but also to the *107 effect of possible impairment of efficiency at work and to the normal pursuit of everyday living. We do not feel this does violence to previous case law in West Virginia, but in any event, we feel it is the better view.
As stated before in this opinion, the Court in Stewart v. State Compensation Commissioner, supra, held that future earning capacity was a factor in determining disability and that such factors as the education, skill and experience of a worker could be considered in awarding total disability. At one time in the development of Workmen's Compensation law, the test of total disability may well have been whether the workman was able to perform any kind of work. Annot., 67 A.L.R. 785, 791. In more recent cases, however, courts have considered whether the test of total disability is the ability to perform work of any character, or to perform work of a similar nature, or whether it relates to the ability to perform work for which the claimant is fitted by training and experience. 99 C.J. S. Workmen's Compensation § 295, pages 1031-1132.
Code, 1931, 23-4-6(l), as amended, provides:
"A disability which renders the injured employee unable to engage in substantial gainful activity requiring skills or abilities comparable to those of any gainful activity in which he has previously engaged with some regularity and over a substantial period of time shall be considered in determining the issue of total disability."
Although the statute may not be controlling in the instant case since the injury occurred in 1969 and the statute was passed in 1970, it is pertinent to note that our Legislature has recognized the problem and provided guidelines for the future determination of total disability.
Whatever the rule may have been in the past, however, certainly the enlightened and humane rule is that a person is totally disabled when he is unable to perform any remunerative work in a field of work for which he is suited by experience or training. Annot., 98 A.L.R. 729. See also 2 Larson, Workmen's Compensation Law 29 (1970); 99 C.J.S. Workmen's Compensation § 299, page 1054 et seq. Each case, of course, will have to be considered on the peculiar facts for the reason that what may be totally disabling to one person would only be slightly disabling to another of a different background and experience.
Both doctors, whose testimony and reports represent the only medical evidence in this case, testified that the claimant was totally disabled from performing the type of work he had in the past performed. The claimant is a 55-year old workman who can barely read and write, and whose only work experience has been manual labor  handling glass and loading and unloading ships. It is obvious from the above rule that Amel Posey, the claimant, is totally and permanently disabled from pursuing any kind of work for which he is fitted by experience, background or training.
While it is true that Dr. Wilson found a disability of only 18 percent, and Dr. Humphries a disability of 40 percent, it is apparent from the testimony of Dr. Humphries that they were offering disability opinions under an erroneous interpretation of the law. Dr. Humphries stated in his testimony: "I don't use the ability to work * * * the Commissioner has a certain rule and regulation concerning the loss of a part and the disability rating is based on that and not on the ability to work." This Court has specifically held that "loss of earning capacity as a result of the injury * * * should be taken into consideration in determining the degree of permanent disability". Stewart v. State Compensation Commissioner, supra at 704. It is the prerogative of the workmen's compensation commissioner and not the examining physician to determine the *108 amount of the award to which the claimant is entitled. Stewart v. State Compensation Commissioner, supra.
Dr. Humphries testified that the claimant could not regain mobility of his knee and would not be able to stand on the leg as he had in the past, unless an operation was performed to fuse the knee. He suggested such an operation to the claimant who refused to have it performed. Dr. Humphries stated that the operation should help the claimant "if you didn't get a blood clot in his leg in that the fusion became solid, and the tissues around his knee did not become sore, * * *". In addition to these complications, Dr. Humphries pointed out in his testimony that the claimant was already suffering from thrombophlebitis in the leg which might be aggravated by such serious surgery and would result in a worse condition than existed prior to the surgery. Dr. Humphries testified that he had informed the claimant of the severe complications which might result from the operation.
The appellee contends correctly that a claimant for workmen's compensation cannot receive a total disability award if he has refused corrective rehabilitative surgery which can be safely performed. Cox v. Workmen's Compensation Commissioner, 150 W.Va. 412, 146 S.E.2d 577; Barnes v. State Compensation Commissioner, 116 W.Va. 9, 178 S.E. 70. However, a claimant is not required to submit to operative procedures which are not reasonably safe and might further endanger his health. Shrewsbury v. State Compensation Commissioner, 127 W.Va. 360, 32 S.E.2d 361; Gillam v. Workmen's Compensation Appeal Board, 118 W.Va. 571, 191 S.E. 204. Dr. Humphries' evidence indicates that the success of the operation was anything but certain. There was a possibility of clotting and particularly a danger of serious thrombophlebitis developing in the claimant's leg, which "would be worse than it was in the first place". Under these circumstances, it cannot be said that the claimant's refusal to submit to the further operation was unreasonable and certainly was not sufficient to bar him from receiving a total permanent disability award.
We hold, therefore, that the claimant is entitled to an award of total permanent disability and that he is not barred from receiving the award because of his refusal to submit to additional surgery in light of the evidence in this case. "An order of the Workmen's Compensation Appeal Board, reversing an order of the State Compensation Commissioner * * * dealing with an award of compensation based on percentage, or otherwise, which does not take into consideration all of the factors to be considered in making an award, is therefore plainly wrong and will be reversed by this Court, with directions to enter a proper order as indicated by the evidence." Kamensky v. State Compensation Commissioner, 148 W.Va. 258, syl., 134 S. E.2d 582. See also Bragg v. State Workmen's Compensation Commissioner, 152 W.Va. 706, 166 S.E.2d 162; Oliver v. State Workmen's Compensation Commissioner, 152 W.Va. 478, 164 S.E.2d 582; Walk v. State Compensation Commissioner, 134 W.Va. 223, 58 S.E.2d 791.
A collateral issue in this case involves the extent to which the employer shall be charged for the disability award made. Chapter 23, Article 3, Section 1, Code, 1931, as amended, provides in pertinent part as follows:
"If an employee who has a definitely ascertainable physical impairment, caused by a previous injury, irrespective of its compensability, becomes permanently and totally disabled through the combined effect of such previous injury and a second injury received in the course of and as a result of his employment, the employer shall be chargeable only for the compensation payable for the second injury: Provided, however, that in addition to such compensation, and after the completion of the payments therefor, the employee shall be paid the *109 remainder of the compensation that would be due for permanent total disability out of a special reserve of the surplus fund known as the second injury reserve * * *."
Dr. Humphries' testimony is the only detailed evidence in the record concerning the preexisting injury. He stated that the claimant's injury to his knee in 1950 predisposed the claimant to the injury he received in 1969, indicating that the recent injury might not have been as severe but for the claimant's preexisting injury.
Dr. Humphries performed the surgery in 1950 and in 1969, and is certainly in a better position than any other possible medical witness to compare the amount of disability occasioned by the 1950 accident and the 1969 accident.
In cases of this type, it is often a better practice to refer the case to the Commissioner for development of the medical facts as to the percentages of disability caused by the previous and second injury. However, it is obvious from the record that such referral would not further perfect the evidence. The only knowledgeable physician has already stated his opinion. His opinion, although far from being exact, indicates that the 1969 injury was the precipitating cause of the claimant's present complaint. He makes it equally clear that the claimant would not be totally and permanently disabled had it not been for the 1950 injury. The employer, therefore, should not be charged for the total disability award.
For reasons stated in this opinion, the order of the Workmen's Compensation Appeal Board is affirmed insofar as it awards the claimant a 40 percent permanent partial disability award as a result of the injury received on January 13, 1969. The aforesaid Appeal Board order is reversed, however, insofar as it denies appellant a total permanent disability award, the remainder of the compensation due for such permanent disability award to be charged against the second injury reserve provided for in Section 1, Article 3, Chapter 23, Code, 1931, as amended. The case is, therefore, remanded to the Workmen's Compensation Commissioner with the direction that an order be entered in accordance with this opinion.
Affirmed in part; reversed in part; remanded with directions.