HERBERT A. GRIFFITH

*v.*

STATE WORKMEN'S COMPENSATION COMMISSIONER

*and*

UNITED STATES STEEL CORPORATION

(No. 13437)

Decided May 21, 1974.

*Campbell, Love, Woodroe & Kizer, George W. S. Grove, Jr.,* for appellant.

*J. Thomas Lane,* Legal Division, Workmen's Compensation, for State Workmen's Compensation Commissioner.

HADEN, JUSTICE:

This is an appeal by United States Steel Corporation from an order of the Workmen's Compensation Appeal Board affirming a previous order of the Workmen's Compensation Commissioner which had granted the claimant

Griffith a life award under the second injury provision of West Virginia Code, chapter 23, article 3, section 1, as amended. In this case the claimant first was found to be 40% impaired in his capacity to work due to occupational pneumoconiosis which, when considered in light of previous disabilities totaling 63%, resulted in a further determination by the Commissioner of claimant's entitlement to a lifetime award of total permanent disability compensation.

Proof offered at hearings conducted by the Appeal Board, the Occupational Pneumoconiosis Board and the Commissioner, established that prior to filing his current claim for occupational pneumoconiosis, Herbert A. Griffith had suffered work-related injuries during his life resulting in permanent partial disability awards totalling 38%. In addition, Mr. Griffith had suffered another definitely ascertainable impairment, unrelated to employment, which was evaluated as a 25% permanent partial disability. Accordingly, claimant was 63% disabled before consideration of his current claim for occupational pneumoconiosis.

No party to this appeal disputes that claimant is totally disabled nor that he is entitled to a life award of total disability compensation pursuant to the provisions of the second injury provision of the workmen's compensation statutes. In fact, the employer joined with the claimant in the motion to the Commissioner that the claimant be considered for the life award.

The employer's legal and factual contentions are limited to the question of proper charges allocable under the statute as between and against its own account and that of the second injury reserve fund. Consequently, the issue before the Court is whether the Appeal Board was correct in affirming the Commissioner's determination that the employer was chargeable for a 40% permanent partial disability award made to the claimant for impairment due to occupational pneumoconiosis.

The disputed charge against the employer's account was based upon evidence developed originally before the Oc-

cupational Pneumoconiosis Board. There the claimant submitted to medically recognized tests of physical and lung capacity which demonstrated a significant impairment of his present capacity when compared with earlier medical studies of his respiratory system. A substantial concurrence of medical opinion testifying as to the results of these tests considered with the foreknowledge of claimant's prior physical condition provided the basis for the Commissioner's determination of 40% impairment due to occupational pneumoconiosis. The three physicians comprising the Occupational Pneumoconiosis Board also unanimously recommended the 40% award. Additionally, the testimony of two physicians offered on behalf of the claimant concurred in the finding of total disability and pulmonary impairment due to occupational pneumoconiosis. Dr. Ralph Jones, speaking on behalf of the employer, concurred in the above findings; but the substance of his testimony indicated a less severe impairment to pulmonary areas than the claimant's doctor had indicated. Dr. Jones, however, failed to rate the percentage of impairment due to occupational pneumoconiosis. Only Dr. Russel Kessel, an orthopedic physician testifying on behalf of the employer, arrived at a somewhat contrary conclusion which will be examined in our appraisal of the evidence.

Factually, the employer contends that the Commissioner's award of a 40% permanent partial disability for occupational pneumoconiosis is not supported by the *evidence* and should be reversed as plainly wrong. We reject that contention as having no merit. The only evidence directly contradicting the Commissioner's determination of the 40% permanent partial disability is a medico-legal conclusion of Dr. Kessel, best summarized in passages from his own report under date of May 24, 1972:

> "[T]his employee of the United States Steel Corporation who is now said to be unable to work has been awarded a 40% permanent partial disability by the Workmen's Compensation Fund for pneumoconiosis. This examiner assumes that this is a

proper award, and is not professionally capable of making a determination of the extent of pneumoconiosis or of a recommendation as to the amount of permanent partial disability that may be produced in this claimant by the condition. He assumes that the forty (40) per cent is a legitimate award.

\* \* \*

"The disability is in my opinion such that qualifies the claimant for total permanent disability under the Second Injury statute . . . ."

Further, after classifying and reviewing all previous injuries, compensable and noncompensable, suffered by the claimant, the doctor concludes:

"This would total sixty-three (63) per cent permanent partial disability. Therefore, in the Second Injury statute he would be entitled to twenty-two (22) per cent permanent partial disability in his award for pneumoconiosis."

The foregoing conclusory statement of the physician represents not a medical rating of disability, but rather, an interpretation of West Virginia Code, chapter 23, article 3, section 1, as amended. Although the physician conceded that he was professionally unqualified to evaluate claims for occupational pneumoconiosis, he then proceeded to make a legal evaluation, computing and assigning an award of pneumoconiosis, based upon his understanding of the statute in question.

Forebearing to comment upon the physician's legal expertise, we simply reaffirm that the determination of disability awards is the duty and responsibility of the Workmen's Compensation Commissioner. *Sisk v. Workmen's Compensation Commissioner,* 153 W.Va. 461, 170 S.E.2d 20 (1969); *Stewart v. Workmen's Compensation Commissioner,* 155 W.Va. 633, 186 S.E.2d 700 (1972). An order of the Workmen's Compensation Appeal Board affirming the finding of the Workmen's Compensation Commissioner will not be reversed on appeal unless it is

clearly wrong. *Pannell v. Workmen's Compensation Commissioner*, 126 W.Va. 725, 30 S.E.2d 129 (1944); *Prince v. Workmen's Compensation Commissioner*, 123 W.Va. 67, 13 S.E.2d 396 (1941); *Vento v. Workmen's Compensation Commissioner*, 130 W.Va. 577, 44 S.E.2d 626 (1947). "[It] will not as a general rule be set aside if there is substantial evidence and circumstances to support it." *McGeary v. State Compensation Director*, 148 W.Va. 436, 439, 135 S.E.2d 345, 348 (1964).

Leaving the factual question, the employer alternatively argues the primary issue—the legal method of allocating charges to the employer under the second injury provision of the *Code*. Reading statutes in *pari materia*, the employer contends that, as an injured workman reaches total permanent disability within the meaning of West Virginia Code, chapter 23, article 4, section 6, as amended, when he has been determined by the Commissioner to be 85% partially disabled, where the evidence demonstrates a claimant to be 63% disabled from definitely ascertainable prior impairments, his employer should be chargeable on the final disabling injury for no more than the 22% additional disability necessary to satisfy minimum requirement for a total disability rating and a life award. The employer argues that this method of computation and allocation of charges should be used by the Commissioner even though the actual disability rating for the current and final "second injury" is a larger numerical figure. For example: determining, as we have, that 40% disability is correctly attributable to claimant's impairment for pneumoconiosis, the employer says it should be chargeable only for the numerical percentage necessary to reach 85% permanent partial, the statutory equivalent of total disability.

The argument has surface merit and apparent support in the prior administrative practice of the Commissioner who admits that his office,—by inadvertence, design or lack of guidance from this Court—, has on an *ad hoc* basis computed charges first one way and then, the other. The

employer makes specific reference to recent charging methods used by the Commissioner in second injury claims which follow the method urged by it, and this is not denied by the Commissioner.

Regardless of the foregoing, we believe that confusion between the statutory concepts of disability rating methods, on the one hand, and chargeability, on the other, has created the problem. The concepts are not interchangeable because they are not synonymous.

The rating of disabilities, regardless of legislative precision or medical expertise, remains an inexact science. Considering the same person, there are Social Security disabilities which are not Workmen's Compensation disabilities, *vice versa, etcetera,* and *ad infinitum.* Even remotely, these comparisons certainly do not indicate the range of disability potentials under the concepts recognized by law or by medical or social sciences. Although questionable by standards of logic, a person may be 103%, 200% or more disabled under the necessarily inexact criteria developed by draftsmen attempting to account for countervailing theories of disability. But, at least recently, in this jurisdiction's workmen's compensation law, total disability has been humanely defined with clarity and common sense:

> "A claimant is permanently and totally disabled under our workmen's compensation statute when he is unable to perform any remunerative work in a field of work for which he is suited by experience or training." Part syllabus point 3, *Posey v. State Workmen's Compensation Commissioner,* 157 W.Va. 285, 201 S.E.2d 102 (1973).

So too, with only slight elaborations, this Court has this day restated the Legislature's method of awarding lifetime compensation for total disability occurring to previously handicapped workmen:

> "Awards for permanent total disability are to be ascertained by utilizing and aggregating all definitely ascertainable prior impairments to determine if the claimant is, at the minimum, 85%

disabled to perform work in a field of employment for which he is suited by experience or training." Syllabus point 9, *Gillispie v. Workmen's Compensation Commissioner,* 157 W.Va., 829, 205 S.E.2d 164 (1974).

Chargeability, on the other hand, is based upon wholly different considerations and is governed strictly by West Virginia Code, chapter 23, article 3, section 1, as amended. As respects charges allocable to the claimant's current employer in second injury awards, the statute provides: ". . . the employer shall be chargeable only for the compensation payable for such second injury . . . ." This statute embodies the essence of the salutary rule of the case of *McDaniel v. Workmen's Compensation Appeal Board,* 118 W.Va. 596, 191 S.E. 362 (1937). In that case this Court directly confronted the problem of awarding total permanent disability to an employee who, by reason of prior disabilities coupled with a current industrial injury, became totally and permanently disabled within the contemplation of the workmen's compensation statute. When the case was decided there was no second injury provision or surplus fund available to satisfy compensation claims for prior disabilities. Consequently, the Court had to balance the necessity of providing compensation to an employee no longer able to engage in gainful employment while also endeavoring to avoid placing a disproportionate burden upon an employer which had chosen to hire a workman who carried with him previous disabilities. Without benefit of statutory authorization, this Court held that the employer should be chargeable only for the current second injury resulting in total disability and that the general funds in the hands of the Workmen's Compensation Commissioner should be additionally charged with the remainder of the compensation after the current injury disability benefits had been paid. With the adoption of West Virginia Code, chapter 23, article 3, section 1, as amended in 1947, the Legislature since has provided the Commissioner with authority to fairly compensate the injured workman who is totally disabled by reason of a current injury and previous disabilities and, as well, fairly

charge the injured workman's current employer only for the current injury.

So, first by decision and then by statute, it has been the policy of this State that the degree of disability resulting from the second injury to a previously impaired workman should be determined as if the injury had been inflicted upon an unimpaired workman, and the employer's account charged accordingly when considering total disability claims arising from second injuries. See, *Gillispie v. Workmen's Compensation Commissioner,* 157 W.Va. 829, 205 S.E. 2d 164 (1974) ; *Posey v. Workmen's Compensation Commissioner,* 157 W.Va. 285, 201 S.E.2d 102 (1973); *Cline v. Workmen's Compensation Commissioner,* 156 W.Va. 647, 196 S.E.2d 296 (1973); *Hughes v. State Workmen's Compensation Commissioner,* 156 W.Va. 146, 191 S.E.2d 606 (1972) ; *Roberts v. State Workmen's Compensation Commissioner,* 155 W.Va. 846, 188 S.E.2d 771 (1972); *Dillon v. State Compensation Commissioner,* 146 W.Va. 269, 119 S.E.2d 89 (1961); *Bostic v. State Compensation Commissioner,* 142 W.Va. 484, 96 S.E.2d 481. (1957); *Hardin v. State Compensation Commissioner,* 127 W.Va. 56, 31 S.E. 2d 436 (1944).

In the *Gillispie* case, *supra,* this Court holds that an employer should be chargeable with no more than the disability attributable to the current or second injury and that consequently, an order of the Workmen's Compensation Appeal Board reversing the Commissioner, which purported to charge an employer for a theretofore compensated disability was erroneous. It is the policy of that decision and of this decision as well, to affirm that a participating employer is fairly and legally charged by the Commissioner in his determination of a total permanent disability award under the second injury statute when such employer is held chargeable for the degree of disability attributable to the current or second injury. As the *Gillispie* case illustrates, the rule may be applied to result in protection for the employer. Illustrated by this case, the rule also may be put to an application appearing

to result in detriment to the covered employer. In reality, the rule insures scrupulous neutrality; the employer is charged with no more nor less than the award for the current injury or disease.

It does not penalize the employer who chooses to employ a workman who carries with him previous disabilities, nor does it prevent an injured workman from receiving just and adequate compensation for his lifetime when he is unable to continue to perform remunerative work in the field of work for which he is suited by experience or training because of his disabilities. Both protections augment the overriding policy of the statute which encourages employers to re-employ still useful workmen who are handicapped with prior disabilities. We are not persuaded to tinker with the application of a fair and beneficial rule.

The parties also present a collateral question for disposition. Both the employer and the claimant urge this Court to take notice of the fact that the Commissioner initially determined on October 24, 1972, that the claimant was entitled to a life award for total permanent disability. Because the issue of the percentage of disability attributable to the current second injury claim and its chargeability as between and against the employer and the second injury fund has been in litigation between the employer and the Commissioner since October 1972, the Commissioner has failed to authorize payment of compensation to the claimant pending the outcome of this appeal. Accordingly, the employer and the claimant urge this Court to recognize that a claimant should be dismissed as a party where the actual dispute continues only between the employer and the Commissioner and where the sole issue remaining to be litigated deals with the chargeability of an undisputed award, so that the claimant can receive benefits under such award without unnecessary delay.

The facts of the instant case dramatically illustrate the claimant's dilemma. Mr. Griffith filed for occupational pneumoconiosis benefits on January 24, 1970. Almost four years later, the case came before this Court. Despite the

fact that the claimant is totally and permanently disabled from injuries and diseases incurred while laboring in covered employment, to this day, he has received not one penny of the workmen's compensation benefits due him under the total disability award. Unfortunately, his problem is not an isolated one. As graphically argued by the appellee's counsel, who has had vast professional experience with claims of this nature, most coal miners, by the time they file an occupational pneumoconiosis claim, have worked in the mines for many years and have suffered one or more injuries of varying degrees of severity. In cases where there is determined to be a significant degree of disability caused by pneumoconiosis, the numerical total of pre-existing disability and pneumoconiosis disability frequently exceeds 85%. Many employers, although readily conceding that the claimant is totally disabled, exercise their right of protest under the statute. Thereafter, the case is litigated on the sole question of allocation of charges between the employer and the second injury fund. Time consumed in litigating can, and does, stretch into months and years. In the meantime, a deserving and often needy claimant is denied the use of the monies that have been determined to be rightfully his.

Apparently the Commissioner agrees that the claimant once determined to be totally and permanently disabled within the meaning of the second injury statute, should promptly begin receiving benefits but the Commissioner is reluctant to exceed his legitimate powers, since no statute grants him express authority to begin immediate payments to disabled workmen in the face of continuing litigation over the issue of chargeability.

We agree with the parties that there is no logical reason to delay payment of benefits to the claimant or to retain claimant as a nominal party to the appeal under these circumstances. The occasioned delay is contrary to the very concept of workmen's compensation:

> "One of the primary objects of the Legislature in
> establishing the Workmen's Compensation system

is to provide prompt and fair compensation to persons entitled to the protection which the law affords in that respect and courts look with disfavor upon delay in the accomplishment of that legislative purpose." *State ex rel. Conley v. Pennybacker,* 131 W.Va. 442, 448, 48 S.E.2d 9, 13 (1948).

The expressed public policy of the Legislature since 1971 is that just claims for compensation shall be promptly concluded:

"It is the policy of this chapter that the rights of claimants for workmen's compensation be determined as speedily and expeditiously as possible to the end that those incapacitated by injuries and the dependents of deceased workmen may receive benefits as quickly as possible in view of the severe economic hardships which immediately befall the families of injured or deceased workmen." West Virginia Code, chapter 23, article 5, section 3a, as amended.

In view of the policy of this statute and in recognition that the Commissioner may exercise not only the powers expressly granted him by statute, but also such additional powers of a procedural or administrative character as are reasonably implied as a necessary incident to the express powers granted the Commissioner and in furtherance of the expeditious performance of duties imposed upon his office by law, we strongly suggest immediate implementation of a policy that will insure prompt payment of undisputed claims. See, *Colvin v. Workmen's Compensation Commissioner,* 154 W.Va. 280, 175 S.E.2d 186 (1970), syllabus point 1.

This Court is of the opinion the Appeal Board's and the Commissioner's interpretation of West Virginia Code, chapter 23, article 3, section 1, as amended, was correct.

*Affirmed.*